(No. 39510.—

CHICAGO SCHOOL TRANSIT, INC., *et al.*, Appellants, *vs.* THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed May 23, 1966.—Rehearing denied September 21, 1966.*

HALFPENNY, HAHN & RYAN, of Chicago, (HAROLD T. HALFPENNY, JAMES F. FLANAGAN, and MARY M. SHAW, of counsel,) for appellants.

RAYMOND F. SIMON, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and MARVIN E. ASPEN, Assistant Corporation Counsel, of counsel,) for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Plaintiffs are owners and operators of vehicles used in transporting children to and from schools of the city of Chicago. They filed this declaratory judgment action challenging the validity of chapter 28.2 of an ordinance of the city regulating privately owned school buses on the grounds that the city lacked statutory authority to pass the ordinance, that it purports to legislate in a field pre-empted by the State, and that it is class legislation in that it exempts carriers certified by the Illinois Commerce Commission and vehicles of the Chicago Transit Authority. This appeal is from a judgment for the defendants on the pleadings.

The ordinance requires the carrying of liability and property damage insurance in specified amounts, provides for inspection and registration certificates, fixes drivers' requirements as to age and experience and requires use of certain safety features.

The city concedes that there is no .specific statutory authorization for licensing and regulating privately owned school vehicles, but contends that the power is derived from various enumerated powers in the Illinois Municipal Code. (Ill. Rev. Stat. 1965, chap. 24, pars. 11—1—1 *et seq.*) Among the designated powers are the authority to pass and enforce necessary police ordinances (sec. 11—1—1); to license, regulate, and tax runners for cabs and buses (sec. 11—42—4), and hackmen and persons with similar occupations (sec. 11—42—6); to regulate the use of streets (sec. 11—80—2); to regulate traffic and sales upon the streets (sec. 11—80—20); to regulate (subject to the provisions of the Uniform Act Regulating Traffic on Highways) the speed and loads of vehicles (sec. 11—40—1); and to require resident owners to submit motor vehicles to inspection (sec. 11—40—2).

Municipalities may exercise only the powers expressly delegated to them by the legislature or those which are necessarily implied or incident to power expressly granted.

(*Arms* v. *City of Chicago,* 314 Ill. 316; *Heidenreich* v. *Ronske,* 26 Ill.2d 360; *Ives* v. *City of Chicago,* 30 Ill.2d 582.) The implied power may be gathered from a single express grant of authority, or from several. (*Good Humor Corporation* v. *Village of Mundelin,* 33 Ill.2d 252.) A determination of whether, in a given case, the power sought to be exercised is necessarily implied or incident to a power or powers expressly granted may be gathered, not only from the language of the acts from which the implied power purports to stem, but also from enactments in the field under inquiry.

The Illinois Motor Vehicle Law, (Ill. Rev. Stat. 1965, chap. 95½, pars. 1—101 *et seq.,*) specifically applies to buses owned or operated by or for a public or governmental agency. (Sec. 1—162.) They are vehicles of the second division and, as such, are subject, under the Uniform Act Regulating Traffic, to detailed requirements relative to brake equipment and performance, horns, mufflers, mirrors, unobstructed windshields and wipers, pneumatic tires and safety glass. (Pars. 211 to 217.) Section 113.01 (par. 210a) provides for special lighting equipment. Under section 123 (par. 220) owners are required to submit their vehicles to safety tests and secure a certificate of safety before operating them upon the highways, and sections 123.01 to 123.13 (pars. 220.1 to 220.13) require testing and inspection of brakes, lights, horns, reflectors, rear vision mirrors, mufflers, safety chains, windshields and windshield wipers, warning flags and flares, frame, axle, cab and body, wheels, steering apparatus, and other safety devices and appliances. Sections 8—101 *et seq.* of the Illinois Motor Vehicle Law provide, *inter alia,* that persons in the business of providing transportation for minors to and from educational facilities must furnish proof of financial responsibility. This may be accomplished by furnishing a $15,000 bond for each vehicle or a liability insurance policy for a like amount.

The School Code (Ill. Rev. Stat. 1965, chap. 122) con-

tains further requirements. Section 29—5 of the Code authorizes the furnishing of free transportation of pupils by school districts and reimbursement of approximately one half of the cost by the State, provided the transportation meets the standards of safety, comfort, convenience, efficiency and operation prescribed by the Superintendent of Public Instruction.

Under this directive and by his authority to adopt rules (sec. 2—3.6), the State Superintendent has promulgated comprehensive and detailed rules. The rules cover construction, lay-out and equipment of school buses, prescribe driver qualifications, and require periodic testing of the buses. They provide that before a testing lane is eligible as an approved inspection station to test school vehicles there must be an official Testing Station Permit issued by the Department of Safety; and the qualifications of a school bus driver not only require a chauffeur's license, but a driver must take periodic health examinations, take first-aid training, and meet exacting character and morals standards.

The ordinance in question was adopted in 1957, consists of 13 sections, and was added to the Municipal Code of Chicago as "Chapter 28.2." There are several conflicts between the ordinance and State law. Section 28.2—3 of the ordinance requires registration with a commissioner despite the provision of section 220.11 of the Uniform Act Regulating Traffic, which reads: "Any second division vehicle displaying a certificate of safety issued under this Act is exempt from any test required by ordinance or otherwise in any city, village or incorporated town in this State." Section 28.2—5 provides for public liability minimums of $50,000-$200,000 and a property damage limit of $5000. This is a greater amount than the minimums fixed by the State and does not permit the alternative of furnishing a bond. Sections 28.2—6 and 28.2—10 of the ordinance deal with capacity inspection and safety inspection, respectively. This ignores the exemption from any municipal test pro-

vided by the statute. The city admits that section 28.2—8 of the ordinance is in conflict with respect to emergency doors and location of aisles on school buses, but contents itself with the statement that it has been the practice of the commission "to ignore this portion [doors] of Section 28.2—8 which conflicts with the State Superintendent's Rules."

We find no implied power. On the contrary, the legislature expressly exempts school buses and drivers from specified areas of municipal regulation and by providing for comprehensive regulation, implies that municipalities have no power to regulate this activity. The city seeks to share regulatory powers with the State and states that the subject matter is not adequately covered by the statutes. Aside from the absence of implied power (which, of course, is necessary in the first instance,) there seems to be little, if any, supplementary regulation in the ordinance. The State's regulations are quite detailed, the rules alone consisting of more than 50 pages. To illustrate the minutiae of the rules, the specification for bus chassis and body covers 26 pages including frame, axles, brakes, exhaust systems, instruments, body sizes, and placement of aisles and doors. This compares with the 5 pages within which the entire ordinance is encompassed.

For the foregoing reasons, we are of the opinion that the ordinance is unconstitutional and void, and the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*