UNION NATIONAL BANK AND TRUST COMPANY, Trustee, *et al.*, Plaintiffs-Appellants, *v.* THE BOARD OF SUPERVISORS OF KENDALL COUNTY *et al.*, Defendants-Appellees.

Second District   No. 77-158

Opinion filed November 27, 1978.

Roy J. Solfisburg, Jr., and Noel C. Davis, both of Aurora, for appellants.

Dallas C. Ingemunson, State's Attorney, of Yorkville, and Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

This appeal essentially questions the power of a county to enforce its zoning ordinance in denial of plaintiffs' right to strip-mine limestone on their property pursuant to a permit issued by the State under the Surface-Mined Land Conservation and Reclamation Act, commonly known as the "Reclamation Act" (Ill. Rev. Stat. 1977, ch. 96½, par. 4501 *et seq.*, formerly Ill. Rev. Stat. 1975, ch. 93, par. 201 *et seq.*).

The plaintiffs as owners of 149 acres of agricultural land in Kendall, a non-home-rule county, possess a permit from the Illinois Department of Mines and Minerals issued pursuant to the Reclamation Act. They petitioned the county for a special use permit under the M-2, Heavy Industrial classification. Upon denial of their application they filed a declaratory judgment action in the Kendall County Circuit Court. Following a hearing relief was again denied and they appeal.

We preliminarily consider defendants' contention that plaintiffs do not have standing. On May 8, 1975, the plaintiffs, Clyde W. Avery and William W. Avery, were the beneficiaries under a land trust in which the bank held legal title as trustee under Trust No. 1743. On that date the property was transferred to Trust No. 1912 with the beneficial ownership remaining the same. However, the petition for rezoning was mistakenly filed on January 14, 1976, in the name of Trust 1743 rather than Trust 1912. The county denied the petition under this number and suit was filed in the Circuit Court again in the mistaken name of Trust 1743. The mistake was detected during trial and at the close of testimony the trial court denied defendants' motion to dismiss the case on the ground that Trust 1912 owned the property and not Trust 1743.

■■ Under the Kendall County zoning ordinance one with a "possesory interest entitled to exclusive possession in land" may file the application. The beneficial owners of the trust throughout the proceedings were the Avery brothers and, in fact, Trust No. 1912 was the legal title holder of the subject property at the time of the request for rezoning. We conclude that a misnomer was involved which may be corrected and was corrected. (See Ill. Rev. Stat. 1977, ch. 110, par. 21(3).) The trial court found that

plaintiffs did have the necessary possessory interest in the property to maintain the action and we agree.

We would also preliminarily note that were the county zoning power the only issue in the case, we would conclude that Kendall County could properly condition a special use on compliance with

> "* * * restrictions upon the establishment, location, construction, maintenance, and operation thereof as deemed necessary to protect the value, utilization and enjoyment of the neighboring properties, and to secure compliance with the standards and requirements specified in this section." (Kendall County Zoning Ordinance §13.07 (D).)

Other conditions set forth for the operation of a stone quarry in either the Agricultural or the Heavy Industrial classification in identical terms provide:

> "Stone and gravel quarries and crushing, grading, washing, and loading equipment and structures (may be permitted), provided the land is redeveloped by the owner in accordance with a plan of redevelopment approved with the granting of the Special Use permit and is accompanied by a bond in the amount of the estimated cost of redevelopment of each phase." Kendall County Zoning Ordinance §§7.01(B)(20), 10.02—3(E).

However, we must determine whether the Reclamation Act has preempted the county zoning powers.

The Reclamation Act became effective September 17, 1971. In general, the Act makes it unlawful for any person to engage in surface mining in an area where the "overburden" exceeds 10 feet in depth or where the operation will affect more than 10 acres during the permit year without first obtaining a permit from the Department of Mines and Minerals (Ill. Rev. Stat. 1977, ch. 96½, par. 4504). The act further provides that, prior to obtaining such a permit, a prospective strip-mine operator must submit:

> "* * * a conservation and reclamation plan and map acceptable to the Department. The operator shall designate which parts of the lands to be affected he proposes to reclaim for forest, pasture, crop, horticultural, homesite, recreational, industrial or other uses including food, shelter and ground cover for wildlife and shall show the same by appropriate designation on a reclamation map." Ill. Rev. Stat. 1977, ch. 96½, par. 4506(e)(14).

■■■ The Reclamation Act of 1971 as amended does not expressly repeal any aspect of section 1 of the County Zoning Act. (Ill. Rev. Stat. 1977, ch. 34, par. 3151. See also *County of McHenry v. Sternaman*, 63 Ill. App. 3d 679, 380 N.E.2d 540 (1978).) However, "[w]here two statutes are irreconcilable, the one which was more recently adopted will abrogate

the earlier to the extent that they are inconsistent." (*Johnson v. State Electoral Board*, 53 Ill. 2d 256, 259 (1972).) We find such inconsistency here. Further, "an implied repeal results from an enactment, the terms and necessary operation of which cannot be harmonized with the terms and effect of an earlier act. * * * [T]he later expression prevails since it cannot be presumed that the legislature intended to enact laws which are contradictory." *People ex rel. City of Salem v. McMackin*, 53 Ill. 2d 347, 363 (1972).

Where the General Assembly provides for "comprehensive regulation" of an activity, it thereby implies "that municipalities have no power to regulate this activity." (*Chicago School Transit, Inc. v. Chicago*, 35 Ill. 2d 82, 86 (1966).) Thus, the General Assembly by enacting a comprehensive regulatory scheme with respect to surface mining and reclamation implied that counties and other non-home-rule units of local government should have no power to regulate this activity. To the extent that this implied restriction is inconsistent with the broad zoning powers conferred upon the counties by the County Zoning Act of 1935, the earlier act is, to that extent, repealed. The result in our view is that the County of Kendall has no power to seek to prohibit the operation of strip-mining subject to the Reclamation Act anywhere in the county, pursuant to a zoning ordinance; nor can the county, pursuant to its zoning ordinance, condition the operation of such mining on the submission and approval of a reclamation plan.

The defendants have referred to two separate opinions of the Attorney General of Illinois (Ill. Att'y Gen. Ops. NP-437 (1972) and S-914 (1975)) which suggest a contrary view. In NP-437, the Attorney General expressed the opinion that the Reclamation Act did not repeal, modify or supersede the zoning powers under the County Zoning Act. Following publication of *American Smelting & Refining Co. v. County of Knox*, 60 Ill. 2d 133 (1974), the Attorney General in a later opinion was of the view that *American Smelting* did not affect his previous conclusion because "the Reclamation Act is concerned only with reclamation." (Ill. Att'y Gen. Op. S-914 (1975).) We cannot agree.

In *American Smelting*, the supreme court held that the Reclamation Act of 1971 and the regulations adopted thereunder "present a detailed and concise effort to supervise the reclamation of strip-mined areas." (60 Ill. 2d 133, 139.) The court next held that, implied in the passage of this comprehensive regulatory scheme, was an interdict on local regulation of strip-mining and the reclamation of land that had been so mined. "This would imply that the counties have no authority to regulate reclamation procedures. *Chicago School Transit, Inc. v. City of Chicago*, 35 Ill. 2d 82, 86." (60 Ill. 2d 133, 139). The court further held that "the inescapable conclusion is that the County Zoning Act is not applicable to the

determination of strip-mining reclamation standards." 60 Ill. 2d 133, 140.

The opinion does not support the view of the Attorney General that the Reclamation Act is only applicable to reclamation of strip-mined land and is not in any way concerned with strip-mining itself. The Reclamation Act seeks to regulate strip-mining before it takes place; one of the ways in which it seeks to do so is by requiring the prospective strip-miner to commit himself to a plan of reclamation before he commences mining. *American Smelting* recognizes this in its statement that "[t]he [Reclamation Act of 1971] precludes *strip-mining* without a State permit during a permit year if more than 10 acres is involved or if the area contains at least 10 feet of overburden which must be removed to obtain the mineral." (Emphasis added.) (60 Ill. 2d 133, 139-40.) This appears to be a recognition that the Reclamation Act governs both strip-mining and reclamation and is in keeping with an overall view of the Reclamation Act which by its terms does not merely regulate reclamation apart from the strip-mining that precedes it. It is further noted that the statute provides that "The Department shall consider the short and long term impact of the *proposed mining* on vegetation, wildlife, fish, land use, land values, local tax base, the economy of the region and the State, employment opportunities, air pollution, water pollution, soil contamination, noise pollution and drainage." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 96½, par. 4506(g).

In *O'Connor v. City of Rockford*, 52 Ill. 2d 360 (1972), the supreme court held that the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*) preempted the right of a non-home-rule county to regulate the *location* of sanitary landfills within the county. In *American Smelting*, the supreme court applied the *O'Connor* analysis in deciding whether a non-home-rule county could lawfully seek to regulate the operation of a strip-mine. (60 Ill. 2d 133, 139-40.) Thus, *American Smelting* suggests that non-home-rule counties not only have no right to regulate strip-mining operations pursuant to their zoning powers but also have no right to interfere with the *location* of a strip-mine. See also *County of McHenry v. Sternaman*, 63 Ill. App. 3d 679 (1978).

■ We do not fully agree, however, with the further argument of plaintiffs that apart from the Reclamation Act they need not comply with local zoning since compliance with the Environmental Protection Act is required (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*), and compliance with county zoning is therefore excused pursuant to *O'Connor v. City of Rockford*, 52 Ill. 2d 360 (1972), and related cases. The Reclamation Act does provide that all requirements of the Environmental Protection Act "shall be complied with fully at all times during mining, reclamation, and after reclamation." (Ill. Rev. Stat. 1977, ch. 96½, par. 4507(g).) But we read this provision merely as a legislative statement that any person who seeks

to operate a strip-mine is not exempted from any applicable provision of the Environmental Protection Act by reason of the operation of the Reclamation Act.

Section 21(e) of the Environmental Protection Act requires that any person who wishes to "[c]onduct any refuse-collection or refuse-disposal operations" must first obtain a permit from the agency. (Ill. Rev. Stat. 1977, ch. 111½, par. 1021(e).) It was this type of statutory permit involving both location and operation, that was involved in *O'Connor v. City of Rockford*, 52 Ill. 2d at 366-67 (1972). It does not appear that the Environmental Protection Act by itself preempts the right of counties to regulate, pursuant to the County Zoning Act, where a strip-mining operation will be located.

■■ The Pollution Control Board may require, by regulation, that anyone who seeks to operate "any type of facility, equipment, vehicle, vessel, or aircraft" must first obtain a permit to do so from the Environmental Protection Agency. (Ill. Rev. Stat. 1977, ch. 111½, par. 1039.) The fact that the Board may have adopted such a regulation with respect to the operation of strip-mines does not imply that the General Assembly, in originally enacting the Environmental Protection Act, intended to preempt the right of counties to regulate, by zoning ordinances, the location of strip-mines. Indeed, to so hold would imply that counties may not regulate, by use of their zoning powers, the location of any activity that is potentially subject to regulation by the Pollution Control Board.

The cases cited by the appellants in this regard are inapposite. *O'Connor v. City of Rockford*, 52 Ill. 2d 360 (1972), involved a permit required by title V of the Act. (Ill. Rev. Stat. 1977, ch. 111½, par. 1021(c).) A careful reading of title V and its predecessor legislation led the supreme court to conclude that the General Assembly, in enacting the Environmental Protection Act, intended to confer upon the agency sole responsibility for determining the location of sanitary landfills. (52 Ill. 2d 360, 365-67.) The location of sanitary landfills thus was a special concern of the General Assembly in enacting the Environmental Protection Act. A careful reading of this Act fails to disclose any such special legislative solicitude for the location of strip-mines. In *Village of Union v. Southern California Chemical Co.*, 59 Ill. App. 3d 373 (1978), the court held that a village could not regulate the emission of odors and gas from a chemical factory. The court's holding rests on the view that the General Assembly, in enacting the Environmental Protection Act, preempted the right of local governments to regulate air pollution. The court, in *Village of Union*, did not reach the issue whether a local government could regulate, pursuant to its zoning power, the location of chemical factories. These cases thus do not necessarily imply that because a person may be required

to obtain a "noise permit" or a "dust permit," he need not observe any local zoning ordinance.

In the view we have taken we do not reach plaintiffs' contentions that the judgment appealed from was against the manifest weight of the evidence based on zoning considerations. There was some suggestion in the testimony at trial that the plaintiffs may in the future consider operating a ready-mix or asphalt plant on the land. The plaintiffs have suggested in their briefs and have agreed in oral argument that they would be satisfied with a declaratory judgment which declared their right to operate a strip-mine on the land in question but did not touch upon the question of the operation of a ready-mix or asphalt plant on the land. We do not consider the matter properly before us, but in any event our opinion does not preclude the interest that the county may have under its zoning regulations in regulating any such future use of the property.

The judgment is reversed and the cause is remanded to the trial court with directions to enter a declaratory judgment in favor of the plaintiffs stating that they may engage in the desired strip-mining as long as they comply with all the requirements of the Reclamation Act and the Environmental Protection Act, any county zoning to the contrary notwithstanding.

Reversed and remanded with directions.

RECHENMACHER and NASH, JJ., concur.