(No. 58257.—

THE COUNTY OF KENDALL *et al.*, Appellees, v. AVERY GRAVEL COMPANY *et al.*, Appellants.

*Opinion filed April 19, 1984.—Rehearing denied June 4, 1984.*

RYAN, C.J., and SIMON, J., dissenting.

Roy J. Solfisburg, Jr., and Noel C. Davis, both of Aurora, for appellants.

Dallas C. Ingemunson, State's Attorney, of Yorkville, and William C. Murphy and Patrick M. Flaherty, of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for intervenors-appellees.

JUSTICE CLARK delivered the opinion of the court:

On June 3, 1981, plaintiff, Kendall County, filed a complaint for declaratory judgment to prevent defendant Avery Gravel Company from crushing, grading or washing limestone mined at defendants' strip mine. The strip mine was owned and operated by two brothers, defendants Clyde and William Avery. Gordon Fletcher, Barbara Fletcher Vale, Irving Hauge, Geraldine Hauge, and T. W. Shaw are interested parties who intervened on behalf of Kendall County. The Averys' motion to dismiss was denied by the circuit court of Kendall County, and the trial judge allowed the Averys to take an interlocutory appeal. The appellate court affirmed the trial court's denial of defendants' motion to dismiss (112 Ill. App. 3d 783), and we granted defendants' petition for leave to appeal. 87 Ill. 2d R. 315(a).

This appeal requires us to determine whether the regulations of the State Environmental Protection Agency (the Agency) effectively preempt certain zoning ordinances promulgated by Kendall County. The dispute between Kendall County and the Averys began in 1976. At that time, the Averys owned 149 acres of farmland in Lisbon township of Kendall County. On January 14, 1976, the Averys filed a petition for rezoning with Kendall County. The Averys requested that 109 acres of their land be rezoned from agricultural use to heavy industry, permitting the operation of a strip mine on the rezoned property. Kendall County denied the petition for rezoning on April 13, 1976. In May 1976, the Averys filed suit in the circuit court of Kendall County seeking a declaratory judgment supporting the rezoning petition. The circuit court denied the Averys' petition, but the appellate court reversed the trial court (*Union National Bank & Trust Co. v. Board of Supervisors* (1978), 65 Ill. App. 3d 1004) and allowed the Averys' rezoning petition. Interve-

nors Fletcher, Vale, Hauge, Hauge, and Shaw filed a petition for leave to appeal to this court, and that petition was denied. 74 Ill. 2d 589.

Kendall County filed a second suit in the circuit court of Kendall County, seeking an injunction preventing the Averys from crushing, washing, grading, and screening limestone mixed on the Averys' rezoned site. This suit was filed before the appellate court mandate had been received by the trial court, but was voluntarily dismissed by plaintiff, Kendall County. The trial court received the appellate court mandate from the first suit and entered an order allowing the Averys to conduct strip mining and "necessary related operations." The intervenors filed a second appeal, and the appellate court, in a Rule 23 order (87 Ill. 2d R. 23), directed the trial court to strike the words "necessary related operations" from its order. (82 Ill. App. 3d 1197.) The Averys obtained permits from the Agency allowing them to crush, wash, and screen limestone at the mining site. This activity has continued to the present day.

The dispute over the Averys' mining and processing operation prompted Kendall County to file the third suit in the circuit court of Kendall County on June 3, 1981. This suit was referred to earlier and sought a declaratory judgment and injunctive relief to prevent the Averys from "crushing, washing, or screening" limestone unless this activity complied with Kendall County zoning ordinance, section 10—04. On October 4, 1981, the intervenors in the first two lawsuits were allowed to intervene in the third lawsuit.

On June 26, 1981, the Averys filed a motion to dismiss Kendall County's complaint, and the trial court denied this motion on June 16, 1982. The trial judge agreed with both parties' belief that an interlocutory appeal to the appellate court should be allowed, and certified five questions of law as the subject of the appeal.

Only two of these questions are presented for our review:

1. Whether Kendall County may require defendants to obtain a permit to "crush, wash and screen" their limestone, in spite of the fact that the appellate court has ruled that these defendants "may engage in the desired strip-mining as long as they comply with all the requirements of the Reclamation Act and the Environmental Protection Act, any county zoning to the contrary notwithstanding."

2. Whether the appellate court opinion in *Union National Bank & Trust Co. v. Board of Supervisors* (1978), 65 Ill. App. 3d 1004, and/or *County of McHenry v. Sternaman* (1978), 63 Ill. App. 3d 679, gives defendants the right to "crush, wash and screen" limestone under permits they have from the State Environmental Protection Agency which allow them to conduct such activities on their property until 1986.

The parties provide conflicting explanations for the welter of litigation concerning a single strip mine. The Averys contend that any attempt to crush, wash or screen limestone will be opposed by Kendall County and the intervenors. The Averys further argue that intervenor T. W. Shaw owns and operates a limestone quarry adjacent to the Averys' mine, and that Shaw does not want a business competitor next door. The intervenors maintain there are important public welfare considerations that justify Kendall County's zoning practices. The intervenors argue that the Averys' proposed development would increase flooding dangers and erosion problems in Lisbon township. Kendall County and the intervenors do not attempt to explain why the Averys' strip mine and processing activities endanger the environment while Shaw's adjacent operation does not.

We turn now to the first issue presented for our review, whether the Agency's regulations effectively preempt Kendall County's zoning ordinances. We begin our discussion of this issue by noting the apparent purpose behind the enact-

ment of the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1981, ch. 111½, par. 1001 *et seq.*). The Illinois General Assembly determined "that because environmental damage does not respect political boundaries, it is necessary to establish a unified state-wide program for environmental protection ***." (Ill. Rev. Stat. 1981, ch. 111½, par. 1002(a)(ii).) The Act was enacted in 1970 shortly before the new Illinois Constitution became effective on July 1, 1971. The 1970 Illinois Constitution delegated broad home rule powers upon many Illinois counties. (Ill. Const. 1970, art. VII, sec. 6(a); see also Houlihan & Flynn, *The Siting of Sanitary Landfills and Other Waste Management Facilities—The Legislature Acts*, 70 Ill. B.J. 434 (1982).) Since that time, this court has decided a number of cases involving the tension between unified State control of environmental matters and local control via the use of county zoning restrictions and other ordinances. In *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, this court modified a circuit court injunction to require that a city obtain a permit from the Agency, not the county, before operating a sanitary landfill in an area zoned for agricultural use. The court noted:

> "In our opinion, to hold here that the city's use of the proposed site as a landfill may be permitted only upon issuance of a conditional use permit by Winnebago County, or that the county, by reason of its zoning ordinance may prohibit such use, contravenes the clearly expressed legislative intent that such operations be conducted only upon issuance of a permit from the Environmental Protection Agency. By the enactment of the Environmental Control Act, the General Assembly has expressly declared the need for a 'unified state-wide program' and provided the means for issuance of appropriate permits under regulations promulgated after taking into account precisely the conflicting interests shown by this record." 52 Ill. 2d 360, 367.

*O'Connor* dealt with a sanitary landfill and not the

crushing, washing and screening of limestone at a strip mine site, but environmental concerns are germane to both situations. Similarly, in *American Smelting & Refining Co. v. County of Knox* (1974), 60 Ill. 2d 133, this court determined that a county could not regulate strip mining with requirements more stringent than those imposed by the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1971, ch. 93, par. 201 *et seq.*). In *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, this court held that a county cannot impose additional requirements upon a party that has obtained a permit from the Agency to operate a sanitary landfill. To do so would frustrate a unified State system of environmental protection. (62 Ill. 2d 406, 417.) In the case at bar, even though Kendall County's zoning requirements were already in effect before the Averys attempted to operate their strip mine, they argue that the application of Kendall County's zoning requirements are preventing them from conducting their business activities.

We believe that *Carlson* controls the case at bar. The Averys had obtained a permit from the Agency only to have their business plans vitiated by Kendall County's zoning requirements. It is impossible to have a unified system of environmental control if counties can subvert the Agency with restrictive zoning ordinances. See *City of Des Plaines v. Chicago & North Western Ry. Co.* (1976), 65 Ill. 2d 1; *Cosmopolitan National Bank v. County of Cook* (1983), 116 Ill. App. 3d 1089; see also Orlinsky, *Is the Future of Local Zoning Doomed?: O'Connor, Carlson, and Beyond,* 66 Ill. B.J. 262 (1978).

The County of Kendall and the intervenors attempt to distinguish *O'Connor, Carlson* and *American Smelting* on the grounds that a county should be allowed to regulate the location of a strip mine. We do not agree with this assessment, because the power to regulate the location of a strip mine conveys the power to regulate related operations as well. Finally, the location of the Averys' strip mine

is not before us. This issue was resolved in the Averys' favor in prior litigation between Kendall County and the Averys. We are asked here to determine the validity of Kendall County's ordinance regulating the crushing, washing and grading of limestone, an issue distinct from the location of the Averys' strip mine.

It was established in oral argument that Kendall County is a non-home-rule unit of government. This court analyzed the application of the Act to non-home-rule units in *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494. The court noted:

> "After *O'Connor* and *Carlson*, it is clear that the Act operates to exclude non-home-rule units from the regulation of sanitary landfills. This conclusion, however, is not incompatible with the result reached in *City of Chicago*, which applied to home rule units. An assessment of the relationship between State legislation and regulations enacted by a local governmental unit requires a different approach when the local unit is a home rule unit. Under the 1970 Illinois Constitution (Ill. Const. 1970, art. VII, sec. 6), effective July 1, 1971, many local units of government became, or were given the power to become, home rule units, which were granted the following power:
>
> > 'Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.' (Ill. Const. 1970, art. VII, sec. 6(a).)" 75 Ill. 2d 494, 507-08.

Since Kendall County is a non-home-rule unit, the county cannot avoid State environmental regulation. We see no reason to depart from the distinction between home rule units and non-home-rule units delineated by *Sexton*.

We shall next consider the county's argument that recent legislation indicates that the legislature did not intend to supersede local zoning control over the location or oper-

ation of strip mines. Section 2 of the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1981, ch. 96½, par. 4502) and section 39 of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1039) were amended as follows:

> "The issuance under this Act of a permit to engage in the surface mining of any resources other than fossil fuels shall not relieve the permittee from its duty to comply with any applicable local law regulating the commencement, location or operation of surface mining facilities." House Bill 134, Pub. Act 82—114, 1981 Ill. Laws 836, 839.

The County of Kendall argues that this legislative enactment justifies the regulation of the Averys' limestone processing. We disagree. We cannot give House Bill 134 retroactive application because of its substantive nature. We believe that the legislature can enact laws such as House Bill 134, but such legislation does not disturb Illinois law before the effective date of the legislation. We are required to decide the case at bar based on the law in effect at the time the lawsuit was filed, rather than subsequent legislative enactments.

Finally, we turn to the second issue presented for review, whether recent appellate court cases give the Averys the right to crush, wash and screen limestone at the strip mining site. We have reviewed the apparent conflict between *Union National Bank & Trust Co. v. Board of Supervisors* (1978), 65 Ill. App. 3d 1004, and *County of McHenry v. Sternaman* (1978), 63 Ill. App. 3d 679. In *Sternaman*, the appellate court held that the Environmental Protection Act superseded county zoning ordinances relating to the operation of a gravel pit. (63 Ill. App. 3d 679, 682-83.) We contrast this decision with *Union National Bank*, where the appellate court ruled that the legislature's enactment of the Act did not prevent counties from regulating the location of strip mines. Although *Union Na-*

*tional Bank* has some vitality for home rule units, we believe *Sternaman* is more analogous to the case at bar, and should be followed in this case. We therefore conclude that the Averys' motion to dismiss Kendall County's complaint for a declaratory judgment should have been granted by the trial court. We therefore reverse both the judgments of the circuit and appellate courts and remand this cause to the circuit court of Kendall County to enter an order consistent with the views expressed in this opinion.

*Judgments reversed;*
*cause remanded.*

CHIEF JUSTICE RYAN, dissenting:

My disagreement with my colleagues stems from the holding of this case that, for some reason, a different rule of law applies to non-home-rule units from that which applies to home rule units concerning the authority to legislate with regard to the environment. To me, such a holding is not logical. It may be appropriate in many areas to have such divided authority as this opinion creates. However, when dealing with environmental matters, uniformity of regulation throughout the State is essential if the constitutional guarantee to each person of a healthful environment is to be achieved. Ill. Const. 1970, art. XI, sec. 2.

In *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, this court announced the rule that units of local government (home rule and non-home-rule) may legislate in the environmental field concurrently with the General Assembly, subject to the minimum standards established by the legislature. In *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, in a seriously fragmented opinion, this court overruled at least that part of *City of Chicago v. Pollution Control Board* which related to the authority of non-home-rule units to legislate on environmental matters. In *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, this court affirmed the holding of *City of*

*Chicago v. Pollution Control Board* insofar as it related to the authority of a home rule unit to legislate on environmental matters, but in *dicta* (the case did not involve a non-home-rule unit) the court held that non-home-rule units did not possess the same authority. The majority opinion in this case now casts in stone this difference between home rule and non-home-rule units, which heretofore found its most persuasive support in the *dicta* of *County of Cook v. John Sexton Contractors Co.*

Uniformity is essential in environmental matters, as is recognized in the majority opinion. I have long argued that all units of local government have the authority to legislate in this field, subject to the limitations set out in *City of Chicago v. Pollution Control Board.* A home rule unit's authority to legislate in this area is found in the constitutional provisions relating to home rule units. (Ill. Const. 1970, art. VII, sec. 6.) The authority of non-home-rule units to legislate in this field is found in their police powers. In my dissent in *Carlson v. Village of Worth,* and in my dissent to the supplemental opinion on denial of rehearing in that case, I discussed in detail the statutory source of those powers and the decisions of this court which have held that local governmental units had the authority to legislate in matters affecting the environment, even before home rule units were authorized in this State by the 1970 Constitution. Those cases need not now be rediscussed in this dissent.

There is a need for local regulation and for local policing of environment problems in all units of local government, both home rule and non-home-rule. As noted in my dissent in *City of Des Plaines v. Chicago & North Western Ry. Co.* (1976), 65 Ill. 2d 1, it is nearly impossible for the Environmental Protection Agency and the Pollution Control Board to effectively police and control all environmental problems arising within local municipalities. I can see no logical reason why non-home-rule units should not be

438

permitted to adopt local ordinances and to enforce them locally to the same extent as home rule units are authorized to do. I would therefore adhere to the holding of *City of Chicago v. Pollution Control Board.*

JUSTICE SIMON joins in this dissent.