LILY LAKE ROAD DEFENDERS *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF McHENRY *et al.*, Defendants-Appellees.

Second District   No. 2—91—0800

Opinion filed July 16, 1992.

McLAREN, J., dissenting.

John D. Gorby, of Chicago, for appellants.

Thomas F. Baker, State's Attorney, of Woodstock, David R. Akemann, of Elgin, and Gordon E. Graham, of Reilly, Prather, Graham & McAndrews, of McHenry (Mary Kay Walter, Assistant State's Attorney, of counsel), for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs, Lily Lake Road Defenders, Friends of Moraine Hills State Park, an association of citizens and taxpayers of McHenry County interested in the environment of the county and the area surrounding Moraine Hills State Park, and various individuals residing and owning property on Lily Lake Road, brought a complaint for declaratory judgment (Ill. Rev. Stat. 1987, ch. 110, par. 2—701) in the circuit court of McHenry County against defendants, the County of McHenry (County) and various individuals associated with the County; the FRAMS Gravel Pit (FRAMS) and its unknown partners, owners, and operators; and Anthony Varese, administrator of the estate of Lawrence Youngberg (Estate), which owned the land upon which the gravel pit had engaged in surface mining operations. Plaintiffs sought to have the circuit court declare section 508 of the 1979 McHenry County zoning ordinance valid and enforceable. (McHenry County

Zoning Ordinance §508 (1979).) Section 508 regulated surface mining and mining reclamation. Additionally, plaintiffs sought a writ of *mandamus* directing the County to enforce the ordinance provision against FRAMS and the Estate and to require reclamation as provided in the zoning ordinance. The court dismissed Lily Lake Road Defenders and Friends of Moraine Hills State Park as plaintiffs, finding that they had failed to state a cause of action. The individually named plaintiffs, as property owners on Lily Lake Road, were found to have stated a cause of action.

Both the McHenry County defendants and plaintiffs moved for summary judgment. Subsequent to a hearing conducted on the motions, the trial court found that section 508 of the ordinance was invalid from its inception. Because the County lacked the authority to perform the acts requested by plaintiffs, the trial court granted the McHenry County defendants' motion for summary judgment and denied plaintiffs' motion.

Plaintiffs appeal from the trial court's judgment and order, raising three contentions of error: (1) that the trial court erred in holding that section 508, the provision of the 1979 McHenry County zoning ordinance pertaining to extraction of earth materials and site reclamation, was void when enacted; (2) that the trial court erred in striking plaintiffs' request to admit facts showing that the County had acted inconsistently in the past with its present position that section 508 is invalid; and (3) that the trial court erred in ordering the release of the *lis pendens* prior to the entry of a final order against plaintiffs.

Defendant FRAMS Gravel Pit had engaged in surface mining operations on a parcel of land located at 2018 Lily Lake Road in McHenry County and owned by Lawrence Youngberg, deceased, since prior to 1979 when the 1979 McHenry County zoning ordinance was enacted. In 1988, FRAMS ceased all operations and abandoned the gravel pit. In their complaint, plaintiffs alleged that, since 1979, FRAMS had enlarged and increased its surface mining operations by at least 25 acres without submitting a reclamation plan or a bond in the amount of not less than $2,500 for each acre affected by the operations and without obtaining a conditional use permit as required by section 508 of the zoning ordinance. Section 508 required all surface mining operations to obtain a conditional use permit by submitting a reclamation plan to the County for approval and to post a reclamation bond to guarantee actual reclamation according to the approved plan. The bond was to be held by the County until the affected lands had been reclaimed in accordance with the reclamation plan.

On April 26, 1989, plaintiffs, as adjoining property owners of the affected property and as Lily Lake Road Defenders and Friends of Moraine Hills State Park, demanded that the County enforce the mining reclamation provision of section 508 of the county zoning ordinance against FRAMS or the estate of Lawrence Youngberg. On May 10, 1989, the County refused this demand on the ground that the reclamation requirements of section 508 did not apply to FRAMS and the affected property since the mining operations were in existence prior to the enactment of section 508 of the 1979 county zoning ordinance.

On May 15, 1989, plaintiffs filed their complaint seeking a declaratory judgment, declaring section 508 to be valid and enforceable, and a writ of *mandamus* against the County, directing it to enforce section 508 against FRAMS and the estate. Plaintiffs also sued *in rem* the parcel of land upon which FRAMS Gravel Pit is located, asking the court to encumber the parcel with the requirement that any purchaser or transferee of the parcel take such parcel subject to a duty to reclaim it as required by the county zoning ordinance. Subsequently, defendant Estate moved to release a notice of *lis pendens* which had been filed by plaintiffs against the parcel, and the trial court allowed the motion.

Defendant County defended against plaintiffs' action by challenging the standing of plaintiffs, by claiming *laches*, a deprivation of a prior use, the inappropriateness of *mandamus*, the invalidity of section 508 due to preemption, supersedure, or a lack of State authority to enact a mining reclamation ordinance in the first place, and by claiming that the 1981 amendment to the Surface-Mined Land Conservation and Reclamation Act (Reclamation Act) (Ill. Rev. Stat. 1987, ch. 96½, par. 4501 *et seq.*) did not revive the reclamation provisions of the 1979 zoning ordinance. The County raised these issues in a motion to dismiss, which was denied as to all issues except the issue of *mandamus*. Later, in a motion for summary judgment, the County centered on the issue of preemption or supersedure of the portion of the 1979 zoning ordinance regulating gravel mining by the State's Environmental Protection Act (EPA) (Ill. Rev. Stat. 1987, ch. 111½, par. 1001 *et seq.*). Plaintiffs filed a cross-motion for summary judgment, asserting that the EPA neither repealed nor preempted the County's authority to require reclamation of surface-mined areas. The court conducted a hearing on the motions.

In an order dated June 10, 1991, the trial court found that the County had no authority in 1979 to enact the provisions of section 508 of the zoning ordinance because the EPA and case law operated as a

direct repeal of section 508. Consequently, section 508 was void when enacted. The court determined that although the State enacted in 1981 the amendment to the Reclamation Act, which authorized counties to regulate surface mining operations locally with the State, the 1981 statute did not revive section 508 because section 508 was void from the beginning and incapable of being revived or of springing into existence. Accordingly, the trial court held that for section 508 to be effective, the County should have reenacted the section after 1981 when the County then had the authority to do so. Because the County waited until 1989 to reenact section 508, when it amended its zoning ordinance, and because defendant FRAMS ceased operations in 1988, the reclamation provisions of the section were inapplicable to FRAMS.

The court granted the McHenry County defendants' motion for summary judgment and denied plaintiffs' motion. This appeal ensued.

Plaintiffs first contend that the trial court erred in holding that section 508, the provision of the 1979 McHenry County zoning ordinance pertaining to extraction of earth materials and site reclamation, was void when enacted. The lower court's holding was based on this court's ruling in *County of McHenry v. Sternaman* (1978), 63 Ill. App. 3d 679, wherein we found that the McHenry County zoning ordinance was superseded by the 1970 EPA and its rules and regulations. We believe this ruling applies to the instant case.

As the County points out, plaintiffs claim that this court is required to analyze the differences between home rule and non-home-rule units of government in order for the court to reach a determination upon the legal issue raised in plaintiffs' first contention. We do not agree and believe that this is only one of many theories which plaintiffs have espoused to confuse the main issue here, *i.e.*, whether the County had the authority to regulate earth-extraction operations and the reclamation of lands affected thereby as part of its zoning powers when it purported to do so in its 1979 ordinance.

In *Sternaman*, the defendant operated a sand and gravel pit in McHenry County. The County charged defendant with violating the county zoning ordinance by failing to obtain a special use permit for the washing and screening of sand and gravel. The issue before this court was whether "the EPA was intended to supersede the McHenry County zoning ordinance enacted pursuant to the powers conferred by the county zoning act [Ill. Rev. Stat. 1975, ch. 34, par. 3151 *et seq.* (now Ill. Rev. Stat. 1989, ch. 34, par. 5—12001 *et seq.*)] insofar as such ordinance relates to gravel pit operations." (*Sternaman*, 63 Ill. App.

3d at 680.) In discussing the relationship between the county zoning act and the EPA, this court stated:

> "The EPA contains no express repeal of the county zoning act. Neither does it repeal the county zoning act by implication by covering the entire subject matter of the zoning act with the intent of being a substitute for it. If there is to be a repeal by application, it must be due to the irreconcilability of the provisions of the subsequent statute when compared to those of the earlier statute." (*Sternaman*, 63 Ill. App. 3d at 681.)

Whether a subsequent statute's provisions are so repugnant to those of the earlier statute that the two statutes are irreconcilable is determined by examining the intent of the legislature and deciding if the legislature intended by the subsequent statute to repeal the former. (*County of Du Page v. Harris* (1967), 89 Ill. App. 2d 101, 106.) Relying on the legislative history of the EPA and the language of our supreme court in a number of cases (*Carlson v. Village of Worth* (1975), 62 Ill. 2d 406; *American Smelting & Refining Co. v. County of Knox* (1974), 60 Ill. 2d 133; *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360), this court found that the EPA superseded the McHenry County zoning ordinance.

In *O'Connor*, the supreme court analyzed the legislative history of the EPA and determined that requiring Rockford to obtain a conditional use permit from Winnebago County to establish a sanitary landfill in an unincorporated area contravened the legislature's intent that such operations be conducted only upon issuance of a permit from the Environmental Protection Agency (Agency). The court reasoned that, by enacting the EPA, the legislature expressly declared the need for a unified statewide program for such matters and that the issuance of the Agency permit was all that was required to operate the landfill.

In *Carlson*, the supreme court dealt with the Village of Worth's (Village's) contention that concurrent jurisdiction could be exercised by both the Village and the Agency, thereby allowing the Village as well as the Agency to require the issuance of a permit for the operation of a sanitary landfill. Issuance of the Village's permit required compliance with its environmental ordinance, which, in turn, required compliance with the Village zoning ordinance. In determining the concurrent jurisdiction issue, the court relied on its analysis of the legislative history of the EPA made in *O'Connor* and then pointed out that the provisions in the original draft of the EPA, which provided for concurrent jurisdiction with the local zoning authorities, were deliberately deleted from the act prior to its enactment. Based on these factors, the court concluded that the legislature intended the EPA to

eliminate any powers reserved to local political entities which could interfere with or frustrate the objective of establishing a unified state-wide system of environmental protection.

In *American Smelting*, the supreme court dealt with a similar concurrent jurisdiction problem and found that the reclamation of strip-mined land is exclusively governed by the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1971, ch. 93, par. 201 *et seq.* (now Ill. Rev. Stat. 1987, ch. 96½, par. 4501 *et seq.*)) and that counties could not impose additional requirements pursuant to their zoning powers. In that case, Knox County sought to apply its zoning ordinance to a surface-mining operation for which a permit had been issued by the Department of Mines and Minerals pursuant to the Reclamation Act. Comparing the Reclamation Act to the EPA, the supreme court applied the reasoning of the *O'Connor* case and concluded that the Reclamation Act presented a detailed and concise effort to supervise reclamation of strip-mined areas, that no demonstrable basis existed for concurrent State and county regulation of reclamation standards, and that, therefore, the county zoning act (Ill. Rev. Stat. 1971, ch. 34, par. 3151 *et seq.* (now Ill. Rev. Stat. 1989, ch. 34, par. 5—12001 *et seq.*)) was not applicable to the determination of strip-mining reclamation standards.

■ The legislative history of the EPA and the language of *O'Connor, Carlson* and *American Smelting* illustrate that the legislature's purpose in enacting the EPA was to establish a unified statewide program for regulating environmental matters. To assure this objective, the legislature deliberately eliminated from the EPA a provision which reserved to local political entities the powers to enact and enforce concurrent legislation pertaining to environmental damage. (*Carlson*, 62 Ill. 2d at 417-18.) Moreover, subsequent efforts to restore these powers were defeated. 62 Ill. 2d at 418.

Based on the legislature's intent and on the language of *O'Connor, Carlson, American Smelting*, and *Sternaman*, we conclude that the EPA superseded the McHenry County zoning ordinance of 1979. The County's authority to regulate earth extraction pursuant to the county zoning act was repealed by implication when the EPA was enacted in 1970 to establish statewide control over environmental issues. Consequently, the County lacked any authority in 1979 to adopt section 508 of its zoning ordinance pertaining to regulation of mining activities and reclamation of land affected thereby. Section 508, as the trial court determined, was void at the time of its enactment.

Plaintiffs argue, however, that, even if the county zoning act and the EPA are irreconcilable, the reclamation provisions of the County's

1979 zoning ordinance are still valid because reclamation of a gravel site is not part of the mining operation and, therefore, not regulated by the EPA, but, instead, left to the control of the County. We do not agree.

■ In *Union National Bank & Trust Co. v. Board of Supervisors* (1978), 65 Ill. App. 3d 1004, this court determined that, by enacting the Reclamation Act (Ill. Rev. Stat. 1971, ch. 93, par. 201 *et seq.* (now Ill. Rev. Stat. 1987, ch. 96½, par. 4501 *et seq.*)), which is a comprehensive regulatory scheme pertaining to surface mining and reclamation, the legislature implied that counties should have no power to regulate this activity. (*Union National Bank*, 65 Ill. App. 3d at 1008.) In *American Smelting*, the supreme court held that the Reclamation Act established detailed supervision of reclamation of strip-mined areas and that implied in the passage of this comprehensive regulatory scheme was an interdict on local regulations of strip mining and the reclamation of land that had been so mined. Thus, counties had no authority to regulate reclamation procedures. *American Smelting*, 60 Ill. 2d at 139.

Additionally, the supreme court pointed out in *American Smelting* that section 206(g) of the Reclamation Act (Ill. Rev. Stat. 1971, ch. 93, par. 206(g) (now Ill. Rev. Stat. 1987, ch. 96½, par. 4507(g))) requires a surface-mine operator to comply with the EPA and its rules and regulations during mining and reclamation operations as well as after reclamation has been completed. (*American Smelting*, 60 Ill. 2d at 140.) We read this provision, as we have done previously in *Union National Bank*, "as a legislative statement that any person who seeks to operate a strip-mine [or surface mine, as here] is not exempted from any applicable provision of the Environmental Protection Act by reason of the operation of the Reclamation Act." (*Union National Bank*, 65 Ill. App. 3d at 1009-10.) We conclude that, even if reclamation is not regulated by the EPA, it is regulated by the Reclamation Act, which effectively repealed that portion of section 508 of the county zoning ordinance pertaining to reclamation of land affected by surface mining. The County has no zoning powers to regulate reclamation of land that has been surface mined.

■ Plaintiffs maintain, however, that, even if reclamation is regulated by State authority rather than local authority, defendant FRAMS, being a small facility mining less than 10 acres of land per year, is unregulated by the EPA. (See 35 Ill. Adm. Code §404.103(a)(3) (1991).) As such, plaintiffs argue, there could be no repugnancy or incompatibility between the EPA and the reclamation provisions of section 508 of the McHenry County zoning ordinance of 1979 and, therefore, pursuant to the county zoning act, the County possessed the

zoning power to regulate small mine reclamation as in the instant case. While this may be a viable theory, plaintiffs have provided us with no record reference to show that FRAMS constituted a small mining facility. Without proof of that fact, we cannot address the question whether the County had the power to regulate the reclamation of the mine due to the fact that the mining operation affected less than 10 acres of land per year.

■ Plaintiffs also contend that the 1981 amendment to the EPA and to the Reclamation Act, granting authority to counties to regulate earth extraction, revitalized the County's 1979 zoning ordinance. Subsequent to this court's ruling in *Sternaman*, section 2 of the Reclamation Act (Ill. Rev. Stat. 1971, ch. 93, par. 202 (now Ill. Rev. Stat. 1987, ch. 96½, par. 4502)) and section 39 of the EPA (Ill. Rev. Stat. 1987, ch. 111½, par. 1039) were amended to provide in relevant part that the issuance under the Acts of a permit to engage in the surface mining of any resources other than fossil fuels would not relieve a permittee from its duty to comply with other applicable local law regulating the commencement, location or operation of surface mining facilities. (See Pub. Act 82–114, §2, eff. August 8, 1981.) Plaintiffs maintain that passage of this 1981 amendment revived the County's 1979 zoning ordinance. This would be true if the ordinance had not been void since its enactment. But, as we have already determined above, the County lacked authority to regulate mining operations and reclamation of lands affected thereby when it adopted the 1979 zoning ordinance, and, therefore, section 508 purporting to regulate these matters was void from the very beginning. Additionally, our supreme court in *County of Kendall v. Avery Gravel Co.* (1984), 101 Ill. 2d 428, declared that the 1981 amendment to the Reclamation Act and to the EPA was substantive and, therefore, could only be applied prospectively. (101 Ill. 2d at 435.) Thus, passage of the 1981 amendment could not give new life to the County's 1979 zoning ordinance.

Although the 1981 amendment gave the County the authority it lacked under the 1970 EPA to regulate mining and reclamation, the County did not reenact section 508 of the zoning ordinance until 1989. By that time, it was too late for the County to enforce the reclamation provisions of section 508 against defendant FRAMS because, in 1988, FRAMS had ceased all mining operations and abandoned the gravel pit site. We conclude that the County lacked the authority to enforce the reclamation provisions of section 508 against FRAMS or the estate of Lawrence Youngberg.

Next, plaintiffs contend that the trial court erred in striking plaintiffs' request to admit facts showing that the County had acted incon-

sistently in the past with its present position that section 508 is invalid. Specifically, in its reply memorandum in support of its cross-motion for summary judgment, plaintiffs listed four occasions between 1979 and 1988 when the County had apparently received a request for a conditional use permit and had either issued or denied the permit under the authority of section 508. Without citation to any authority, plaintiffs maintain that it was reversible error for the court to refuse to admit these facts.

A contention supported by some argument but no authority whatsoever does not satisfy the requirements of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) pertaining to the contents of an appellant's brief. Any issue which has not been adequately presented to this court for review may be deemed waived. (*In re Application of Anderson* (1987), 162 Ill. App. 3d 815, 819.) Consequently, we consider the instant issue waived.

■ Nevertheless, we fail to comprehend how plaintiffs can claim that the court's refusal amounted to reversible error when, in both the memorandum in which plaintiffs first raise this issue and at the hearing on the parties' summary judgment motions, plaintiffs admitted to the court that "these facts" were "not essential" to the court's "legal judgment" on the motions for summary judgment. Given this was plaintiffs' position in the lower court, we do not believe plaintiffs can now claim in this court that these facts were relevant and that the court's refusal to admit them constituted reversible error. Such inconsistency is not permissible. See *Monroe County Water Cooperative v. City of Waterloo* (1982), 107 Ill. App. 3d 477, 480.

Also, contrary to plaintiffs' assertion in their brief that the trial court allowed the County's motion to strike without explanation, the court did explain its decision for granting the motion to strike. The court stated that allowing information regarding what the County "may or may not have done under Section 508 in other cases" would require the court to compare the application of section 508 in the instant case with its application in each of the other cases and that the court did not intend to try these cases or retry them as subsidiary matters of the instant case. We believe this was a correct decision on the part of the trial court, especially when all the court had before it was the name, apparently, of the company requesting a conditional use permit, the permanent index number of the property involved, and, in two instances, the date when the permit was issued or renewed. In the other two instances, it is not even apparent from the information provided to the trial court whether a permit was issued or renewed. However, even if the court's decision to strike plaintiffs'

request to admit facts constituted error, it did not rise to the level of reversible error.

■ In their third contention plaintiffs argue that the trial court erred in releasing the notice of *lis pendens* which plaintiffs filed in the county recorder's office for the purpose of notifying the public that litigation was pending *in rem* against the parcel of land upon which FRAMS Gravel Pit had operated. According to plaintiffs, the court's act was error because any person considering acquiring an interest in the parcel was entitled to notice of the pending suit demanding reclamation of the land and of the possibility that he could be burdened with the cost of reclamation if plaintiffs prevailed in their suit. However, our determination that the trial court acted properly in finding that the County lacked the authority to enforce the reclamation provisions of section 508 against FRAMS or the Estate make it unnecessary to address this final contention.

Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party to summary judgment is clear and free from doubt. (*Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, 165.) Since section 508 of McHenry County's 1979 zoning ordinance was void from its inception, it is clear that the McHenry County defendants were entitled to summary judgment. We conclude that the trial court did not err in granting summary judgment to these defendants.

For the reasons stated, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

WOODWARD, J., concurs.

JUSTICE McLAREN, dissenting:

I respectfully dissent. The majority believes *County of McHenry v. Sternaman* (1978), 63 Ill. App. 3d 679, applies to the instant case. I partially agree and come to a different conclusion. In the *Sternaman* case, a portion of the county's zoning ordinance regarding the regulation of "the mining operation, including washing and screening of sand and gravel" was found invalid pursuant to the implied repeal by the EPA. (*Sternaman*, 63 Ill. App. 3d at 680.) In this case, the factual issue is *not* with the operation of the mine but with the reclamation of the mine *after* the uncontroverted cessation of mining operations. The *Sternaman* court states:

"The EPA contains no express repeal of the county zoning act. Neither does it repeal the county zoning act by implication by covering the entire subject matter of the zoning act with the intent of being a substitute for it. If there is to be a repeal by implication, it must be due to the *irreconcilability* of the provisions of the subsequent statute when compared to those of the earlier statute." (Emphasis added.) (*Sternaman,* 63 Ill. App. 3d at 681.)

I do not believe that the *Sternaman* case held the EPA superseded that portion of the McHenry County zoning ordinance regarding the rehabilitation of the property *after* the cessation of mining operations. Support for this position comes from the fact that the EPA is silent in this regard. Furthermore, the passage of the Reclamation Act is additional evidence that the legislature did not consider the EPA as encompassing mine reclamation. (Ill. Rev. Stat. 1987, ch. 96½, par. 4501 *et seq.*) I conclude that the EPA is not irreconcilable with the applicable provisions of the County zoning ordinance based upon the facts in this particular case because the zoning ordinance is concerned with what is to be done *after* the cessation of operations regarding the reclamation of the land rather than the regulation of ongoing mining operations.

The majority also indicates that the Reclamation Act effectively repealed that portion of section 508 of the County zoning ordinance pertaining to the reclamation of land affected by surface mining. I disagree.

I agree with plaintiffs that, due to the small size of the mine, the Reclamation Act does not apply to this particular mine pursuant to section 4 entitled "Necessity of Permit" which states:

"It shall be unlawful for any operator to engage in surface mining in an area where the overburden shall exceed 10 feet in depth or where the operation will affect more than 10 acres during the permit year without first obtaining from the Department a permit to do so, in such form as is hereinafter provided." Ill. Rev. Stat. 1987, ch. 96½, par. 4504.

Additionally, the Reclamation Act could be interpreted in two ways. First, its statement of policy is silent as to what is done *after* the commencement, location, and operation of surface mining facilities. (Ill. Rev. Stat. 1987, ch. 96½, par. 4502.) Even if it were concerned with reclamation *after* commencement, location, and operation, the Act only exercises jurisdiction of mines greater than 10 acres or where the overburden shall exceed 10 feet in depth *during the permit year*. The mine in this case is excluded from the Reclamation Act un-

der these criteria. Consistent with my interpretation, the statement of policy declares that the permit holder must comply with State and *local* law. Ill. Rev. Stat. 1987, ch. 96½, par. 4502.

The County claims that the reclamation of land is part of the mining process. Neither the EPA nor the Reclamation Act provides for any regulation of the reclamation of this property after the cessation of mining operations. It is axiomatic that, if mining operations have ceased and reclamation has not been instituted, then reclamation is not part of the operation of the mining process. Reclamation of this mine has not been regulated or enforced under the EPA or the Reclamation Act and may never be instituted unless the zoning ordinance is enforced.

In conclusion, there is nothing to suggest that the reclamation of this mine is irreconcilable with the provisions of the EPA or the Reclamation Act. I would, therefore, reverse and remand the cause for further proceedings consistent with my belief that the ordinance was and is enforceable.