AMERICAN FLY ASH COMPANY, Plaintiff-Appellee, *v.* THE COUNTY OF TAZEWELL, Defendant-Appellant—(Families Opposed to Contaminating Uses of Soil, Defendant).

Third District   No. 82—0781

Opinion filed December 14, 1983.

G. Edward Orr, Assistant State's Attorney, of Pekin, for appellant.

Ronald L. Keyser and William L. Kasley, both of Elliff, Keyser, Oberle & Davies, P.C., of Pekin, for appellee.

JUSTICE BARRY delivered the opinion of the court:

This appeal involves an action for declaratory judgment and an injunction by American Fly Ash Company, plaintiff, against the County

of Tazewell, defendant, to determine whether plaintiff was required by statute to obtain a permit from defendant before developing a waste disposal site in Tazewell County.

In the fall of 1980, plaintiff began efforts to locate a new site for disposal of fly ash and boiler slag to serve Commonwealth Edison's Powerton plant located in Cincinnati Township in Tazewell County. Between October of 1980 and November 12, 1981, approximately $94,000 was spent on site location activities by Commonwealth Edison and plaintiff, including engineering studies, drilling, surveys and testing at various potential sites. On July 27, 1981, plaintiff filed an application with the Illinois Environmental Protection Agency for a developmental permit for a site located within Elm Grove Township in an unincorporated area of Tazewell County, and on October 27, 1981, the Agency issued the developmental permit to plaintiff for the requested site.

On November 12, 1981, Public Act 82—682 became law. This act amended the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1001 *et seq.*) to provide that the Environmental Protection Agency could not grant a permit for the development or construction of "a new regional pollution control facility" unless the applicant submits proof to the Agency "that the location of said facility has been approved by the County Board of the county if in an unincorporated area, or the governing body of the municipality when in an incorporated area, in which the facility is to be located ***." (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039(c).) Public Act 82—682 also defines a regional pollution control facility and further defines a "new" facility as one "*** initially permitted for development or construction after July 1, 1981; ***." (Ill. Rev. Stat., 1982 Supp., ch. 38, par. 1003(x)(1).) Thus, even though the act did not become effective until November 12, 1981, more than two weeks *after* the Agency permit was issued, the Tazewell County Board of Supervisors sought to require plaintiff to obtain county board approval of the site under the new act.

Plaintiff did file an application with the Tazewell County Board, but plaintiff also brought this action for declaratory judgment and an injunction against the county. The parties agreed to a stipulation of facts, which provided, among other things, that the deposition of Michell L. Nowicki, operations and product manager for plaintiff for the Peoria area, would be considered as evidence. After a hearing, the trial court ruled in favor of plaintiff, holding that plaintiff is not a new regional pollution control facility under Public Act 82—682 and that defendant is enjoined from proceeding under that Act. Defendant appeals.

██ The determinative issue is, we believe, whether Public Act 82–682 applies to plaintiff's proposed facility which was in fact permitted for development after July 1, 1981, but before the effective date of the Act. Plaintiff had fully complied with the law in effect prior to November 12, 1981, and had a site development permit on October 27, 1981, after expending considerable sums of money for site studies. On November 12, 1981, the law governing such permits changed, and plaintiff now had to obtain additional approval from the appropriate local authorities. This provision of the law clearly mandates retroactive application of the local approval requirements.

We agree with the following statements by the appellate court in *Champaign County Nursing Home v. Petry Roofing, Inc.* (1983), 117 Ill. App. 3d 76, 79, 452 N.E.2d 847, 850:

> "Even where there is a clear legislative intent that a statute be given *retroactive* effect, however, the enactment will not be so applied when to do so would lead to unreasonable or unjust results. [Citation.] Whether the retroactive application of legislation is permissible is not dependent on such outmoded distinctions as whether vested or nonvested rights are affected, or whether a statute affects rights or merely affects remedies. Rather, such cases must be decided on the basis of whether basic concepts of justice, fairness and equity militate for or against the retroactive application of the statute to a particular class of persons."

In the case at bar, we believe justice, fairness and equity require that persons who comply with the law not as it might be but as it is then in effect, and in this instance obtain the required permit after expenditure of funds, should not have that permit nullified by retroactive application of a statute subsequently enacted. Accordingly, we hold that Public Act 82–682 applies only to facilities initially permitted for development or construction after November 12, 1981, and that plaintiff is not required to obtain site approval from the Tazewell County Board.

██ Having ruled that the statute may not be applied retroactively to plaintiff, we are not required to consider the other issue argued by defendant: whether plaintiff's waste disposal site is a "regional pollution control facility" as defined by Public Act 82–682. However, in the exercise of our judicial discretion, we choose to comment on that issue.

Section 3 of the Environmental Protection Act as amended (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1003(x)), sets forth the following definition:

" 'Regional Pollution Control Facility' is any waste storage site, sanitary landfill, waste disposal site, waste transfer station or waste incinerator that accepts waste from or that serves an area that exceeds or extends over the boundaries of any local general purpose unit of government. *** The following are not regional pollution control facilities: (1) sites or facilities located within the boundary of a local general purpose unit of government and intended to serve only that entity; (2) waste storage sites regulated under 40 CFR, Part 761.42; or (3) sites or facilities used by any person conducting a waste storage, waste treatment, waste disposal, waste transfer or waste incineration operation, or a combination thereof, for wastes generated by such person's own activities, when such wastes are stored, treated, disposed of, transferred or incinerated within the site or facility owned, controlled or operated by such person, or when such wastes are transported within or between sites or facilities owned, controlled or operated by such person."

Plaintiff's proposed facility would accept waste only from within Tazewell County but would serve an area that crosses township boundaries. Thus at issue here is whether the term "local general purpose unit of government" includes townships or whether it is limited to counties and municipalities. The parties to this appeal have cited no cases defining the term in question. The only authority of which we are aware is an opinion of the Attorney General which reached the conclusion that the term "local general purpose unit of government" as used in Public Act 82—682 includes only counties and municipalities, not townships. (1981 A.G.O. No. 82—003.) The Attorney General noted that the term "units of local government" is defined in the Constitution as including counties, municipalities, townships, special districts and units designated as units of local government which exercise limited governmental powers. The opinion observed that the local government article of the constitution (Ill. Const. 1970, art. VII) makes clear that counties and municipalities, as a class of units of local government, are to be distinguished from townships. Section 6 of article VII provides that only counties and municipalities may become home rule units, and section 7 enumerates the powers which counties and municipalities which are not home rule units may have in addition to those granted by law. Section 8 grants powers to townships, school districts, and special districts and units of limited governmental powers which are considerably more restricted than those powers provided for counties and municipalities in section 7. On the basis of this analysis and a review of the history of these

constitutional provisions, the Attorney General concluded:

"Although the term 'local general purpose unit of government,' as it appears in Public Act 82—682, is not identical to the term 'unit of local general government,' as discussed above, the terms are substantially equivalent and it is apparent that the General Assembly, by using the term 'local general purpose unit of government,' meant to make the same distinction initially made by the drafters of the local government article."

Defendant attempts to read a contrary legislative intent into the Governor's amendatory veto message, which was subsequently approved by both houses of the legislature. The Governor stated that he "strongly endorsed the concept of greater local control over the location of waste facilities," but then he listed several problems with the bill as presented to him. His message included the following paragraph:

"First, this bill was intended to apply to offsite treatment, storage or disposal facilities, as opposed to those sites where industrial waste stays on the site where it was generated. The definition of 'regional pollution control facility' should be amended to recognize this distinction, and more clearly define the extent of the local approval process."

The Governor discussed other problems and then set forth the specific language which would have to be changed in order for him to approve the bill. The Governor's recommended amendments did not change the definition of "regional pollution control facility" as set out in the first sentence of section 3(x) quoted earlier (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1003(x)) but did amend the description of facilities that are *not* "regional pollution control facilities" to exclude on-site operations and those offsite facilities operated by the person whose activities generate the waste involved. The governor's message did not purport to limit the purpose of Public Act 82—682 solely to offsite treatment facilities, but rather specified that intention as one that needed clarification.

We think it obvious that the legislature primarily intended to negate the holding of the Supreme Court in *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 343 N.E.2d 493, where it was held that the Environmental Protection Act conferred upon the State agency exclusive power over pollution control matters, and thereby preempted all local regulation—zoning or otherwise. Public Act 82—682 does restore zoning powers to the unit of local government having jurisdiction over the proposed site before a permit may be granted by the Environmental Protection Agency for a new facility that is not a regional pollu-

62

tion control facility. (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039(c).) Therefore, those regional facility sites for which permits are sought after the effective date of Public Act 82—682 will be required to obtain approval of the Tazewell County Board pursuant to section 39.2 (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2), and nonregional sites, pursuant to the county zoning ordinance.

To summarize, we conclude that plaintiff's proposed site does not come within the definition of a "regional pollution control facility" because it will not serve an area that extends over the boundaries of any local general purpose unit of government. We reach that conclusion by deciding that townships are not "local general purpose units of government" since, under article VII of the Illinois Constitution, townships are more restricted in purpose than are counties and municipalities. To ignore that distinction would invite confusion. In the event the legislature disagrees that townships are excluded from the term "local general purpose unit of government," the statute can be amended in the future.

For the reasons stated, we affirm the judgment of the trial court.

STOUDER, P.J., and SCOTT, J., concur.