**PESTICIDE PUBLIC POLICY FOUNDA-TION, an association incorporated under the laws of the District of Columbia, Plaintiff,**

v.

**VILLAGE OF WAUCONDA, ILLINOIS, et al., Defendants.**

**No. 84C8110.**

United States District Court, N.D. Illinois, E.D.

Aug. 19, 1985.

time argue that the existence of PQT should be ignored for venue purposes because it is the alter ego of PQM.

MEMORANDUM OPINION
AND ORDER

ROVNER, District Judge.

Plaintiff, the Pesticide Public Policy Foundation ("the Foundation"), challenges the validity of Village of Wauconda Ordinance No. 1984-0-31, which regulates the use of pesticides in the Village. The Foundation is a District of Columbia non-profit corporation whose members include professional lawn care, arborculture and pest control operators serving customers within Wauconda. Defendants are the Village of Wauconda, Illinois, Kenneth McGill, the Village President, and Jerry Bunce, Fred Dierker, James Eschenbauch, Steven Gurevitz, James Keagle, and Robert Ogren, Trustees of the Village of Wauconda.

The Wauconda ordinance requires "users of pesticides" to register and obtain a $25 per year permit from the Village. Ordinance No. 1984-0-31, § 7-12-2. "Users of pesticides" are defined as commercial pesticide applicators and landlords and tenants of buildings open to the public who apply pesticides on those building premises. § 7-12-1. The ordinance prohibits pesticide application when the wind velocity is greater than ten miles per hour, § 7-12-4, and requires that warning signs be posted for 72 hours after application. § 7-12-5. The ordinance specifies the type and number of signs to be posted after spraying indoors, outdoors, and on lawns or lakes. For example, where pesticides are applied to a lawn, the applicator must post a sign which states: "This lawn is chemically treated, keep children and pets off for 72 hours." § 7-12-5(B). The ordinance also regulates fogging; when that method of application is used, the user must give prior notice to abutting neighbors. § 7-12-5(C).

The Foundation challenges the Wauconda ordinance on a variety of grounds. Plaintiff first claims that the ordinance is invalid because the Village lacks the authority to regulate pesticides and users of pesticides. Specifically, the complaint al-

leges that the Village, as a non-home rule unit, lacks the statutory authority to enact the ordinance (Count II), and that the ordinance is preempted by Illinois law (Count III) and federal law (Count I). The Foundation further contends that the ordinance is unconstitutional because it denies plaintiff's members due process and equal protection of the laws as guaranteed by the United States and Illinois Constitutions and because it violates the prohibition against special legislation provided in the Illinois Constitution (Count IV). Finally, the Foundation claims that the Wauconda ordinance violates the Commerce Clause of the United States Constitution (Count V). This Court has both federal question and diversity jurisdiction of this action under 28 U.S.C. §§ 1331, 1332.

Each count in the complaint contains an identical prayer for relief. Plaintiff requests that this Court declare that Ordinance No. 1984-0-31 is invalid under Illinois law or federal law and the United States Constitution and therefore was void *ab initio;* enjoin defendants from enforcing the ordinance; declare that defendants are liable for costs and expenses incurred in complying with Ordinance No. 1984-0-31; and grant to plaintiff the costs of the instant lawsuit.

Presently before this Court are defendants' motion, pursuant to Fed.R.Civ.P. 12, to dismiss the complaint in its entirety, and plaintiff's motion, pursuant to Fed.R.Civ.P. 56, for summary judgment in its favor on Counts I–IV of the complaint.

For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part, and summary judgment is granted in favor of plaintiff on Count III, with the exception noted below.

### Discussion

■ As noted above, the first three counts of the complaint attack the authority of the Village of Wauconda to regulate pesticides. Count I of the complaint alleges that Ordinance No. 1984-0-31 was preempted by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7

U.S.C.A. §§ 136–136y (1980 & Supp.1984), pursuant to the Supremacy Clause of the United States Constitution, Art. VI, cl. 2. FIFRA regulates the registration, distribution, use and labelling of pesticides and the certification of pesticide applicators throughout the United States. Because federal courts have a "strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration," *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979), this Opinion will turn first to the counts of the complaint that are based on state law.

■ Count II of the complaint alleges that the Village of Wauconda, as a non-home rule unit, does not have the authority to regulate the use of pesticides or to license pesticide applicators, and that as a result, Ordinance No. 1984-0-31 is invalid. Where a federal district court confronts questions of Illinois substantive law under diversity jurisdiction, the outcome is, of course, controlled by Illinois law. *Gates Rubber Co. v. USM Corp.,* 508 F.2d 603, 605 (7th Cir.1975).

The scope of an Illinois municipality's power to legislate is determined by its status as either a home rule or a non-home rule unit. Home rule units "may exercise any power and perform any function pertaining to [their] government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const.1970, art. VII, § 6(a). Non-home rule units, however, "have only those powers expressly granted to them by the General Assembly or those necessarily implied from or incident to power expressly granted...." *Appeal Board of the Department of Environmental Control v. United States Steel Corp.,* 48 Ill.2d 575, 577, 272 N.E.2d 46, 48 (1971).

Defendants maintain that the challenged ordinance is a valid exercise of municipal authority under statutory provisions which

allow municipalities to enact regulations to promote health and suppress disease, and to lessen or prevent the discharge of air contaminents. Ill.Rev.Stat. ch. 24, §§ 11-19.1-11, 11-20-5 (1983). Plaintiff claims that in order for the Wauconda ordinance to be valid, it is necessary for an Illinois statute to expressly authorize municipalities to regulate pesticides. In its argument, the Foundation relies in part on the fact that there are two Illinois statutes which deal with pesticide regulation within the State, the Illinois Pesticide Act of 1979, Ill.Rev.Stat. ch. 5, §§ 801-828 (1983), and the Illinois Structural Pest Control Act, Ill.Rev.Stat. ch. 111-½, §§ 2201-2225 (1983), and neither statute mentions local pesticide regulation.

As discussed below, this Court finds that these two Illinois pesticide statutes preempt local governmental regulation in that area. Thus, although it is true that a general police power provision such as section 11-20-5 of the Illinois Municipal Code authorizes municipalities to legislate on a wide range of community health hazards,[1] it is unnecessary for this Court to decide whether, in the absence of the two Acts, the Village would have the authority to regulate pesticide use.

### State Preemption

In Count III of the complaint, the Foundation asserts that the Wauconda ordinance is preempted by the Illinois Pesticide Act of 1979, Ill.Rev.Stat. ch. 5, §§ 801-828 (1983), and the Illinois Structural Pest Control Act, Ill.Rev.Stat. ch. 111-½, §§ 2201-2225 (1983). These statutes regulate the registration, distribution and use of pesticides and the licensing of pesticide applicators in the State of Illinois. According to plaintiff, neither Act authorizes or allows Illinois municipalities or units of local government to further regulate pesticides.

The purpose of the Illinois Pesticide Act of 1979 ("IPA") is "to regulate in the public interest the labeling, distribution, use and application of pesticides...." Ill.Rev.Stat. ch. 5, § 802 (1983). The obligations of the Act are enforced by three Illinois State agencies: the Department of Agriculture administers the Act and supervises the registration of pesticides and agricultural uses; the Department of Public Health oversees structural or indoor pest control; and the Environmental Protection Agency enforces those provisions of the Act which protect the air and water. Ill.Rev.Stat. ch. 5, § 803. The Act provides for annual registration of pesticides, annual licensing of commercial applicators, and certification of applicators of restricted pesticides. Ill. Rev.Stat. ch. 5, §§ 806, 810, 811. The Act also prohibits handling or storing pesticides in an unsafe manner and disposing of pesticides or their containers in such a manner as to endanger public health or the environment or to pollute water supplies. Ill.Rev. Stat. ch. 5, § 814. The Director of Agriculture is further authorized to promulgate additional regulations concerning the storage, distribution and disposal of pesticides and their containers, the methods of pesticide application, and packaging. Ill.Rev. Stat. ch. 5, § 808.

The Structural Pest Control Act ("SPCA") similarly protects public health and welfare by extensive regulation of pesticides. As outlined in the general purposes section of the SPCA, the Act establishes minimum standards for selection, formulation and application of restricted pesticides. Ill.Rev.Stat. ch. 111-½, § 2202. It also requires licensing of commercial

---

**1.** *E.g., Radcliff v. City of Berwyn,* 129 Ill.App.3d 70, 84 Ill.Dec. 348, 472 N.E.2d 98 (1984) (Relying on the general statutory powers of municipalities to promote health and suppress disease, to abate nuisances, and to pass all necessary police ordinances, the court held that the City of Berwyn had the power to prohibit keeping junk cars on private property); *Village of Carpentersville v. Fiala,* 98 Ill.App.3d 1005, 54 Ill.Dec. 521, 425 N.E.2d 33 (1981), *cert. denied,* 456 U.S. 990,

102 S.Ct. 2271, 73 L.Ed.2d 1285 (1982) (Same statutory provisions were ample authority for the enactment of an ordinance prohibiting more than two dogs per residence). *See also City of Des Plaines v. Gacs,* 65 Ill.App.3d 44, 47, 22 Ill.Dec. 82, 85, 382 N.E.2d 402, 405 (1978) ("It has been stated repeatedly that the most important police power possessed by a municipality is its power to protect the health and safety of the community.")

structural pest control businesses, registration of owners of property where restricted pesticides are used, and certification of pest control technicians. *Id.*

Defendants maintain that Ordinance No. 1984–0–31 is neither expressly nor impliedly preempted by the Illinois pesticide statutes. Defendants point out, correctly, that neither Act contains any language which specifically prohibits local governmental regulation in the field of pesticide control.

They further argue that the General Assembly's lack of intent to preempt local pesticide regulation can be seen by comparing the pesticide acts with two statutes which do preempt local regulation. Defendants give as an example the Illinois Environmental Protection Act ("EPA"), which states that its purpose is "to establish a unified state-wide program." Ill. Rev.Stat. ch. 111½, §§ 1001, 1002(b) (1983). They also point to the State Insurance Code, which states that the powers enumerated in that Code "shall not be exercised concurrently, either directly or indirectly, by any unit of local government," as an example of specific intent to preempt. Ill.Rev.Stat. ch. 73, § 614.1 (1975), quoted in *Prudential Insurance Company of America v. City of Chicago*, 66 Ill.2d 437, 6 Ill.Dec. 199, 200, 362 N.E.2d 1021, 1022 (1977).

In addition, defendants observe that the SPCA states that its purpose is to provide for "the establishment of *minimum standards*" for the use of restricted pesticides. Ill.Rev.Stat. ch. 111½, § 2202 (emphasis added). Defendants argue that this language demonstrates that the General Assembly intended only to establish minimum criteria for pesticide use, which then could be supplemented by other governmental units.

Defendants' arguments are not persuasive to this Court. "As applied to state action versus local action, preemption means that where the legislature has adopted a scheme for regulation of a given subject, local legislative control over such phases of the subject as are covered by state regulation ceases." *Hutchcraft Van Services, Inc. v. City of Urbana Human Relations Commission*, 104 Ill.App.3d 817, 823, 60 Ill.Dec. 532, 536, 433 N.E.2d 329, 333 (1982).

It is essential to any discussion of state law preemption in Illinois to recognize that there are two separate preemption standards for home rule and non-home rule units. In *County of Cook v. John Sexton Contractors Co.*, 75 Ill.2d 494, 27 Ill.Dec. 489, 389 N.E.2d 553 (1979), the Illinois Supreme Court held that the Illinois Environmental Protection Act did not preempt a home rule county from regulating sanitary landfills in the county through its zoning restrictions. In *Sexton*, the Court stressed an Illinois constitutional provision which states: "Home rule units may exercise concurrently with the State any power of a home rule unit to the extent that the General Assembly does not *specifically* limit the concurrent exercise or *specifically* declare the State's exercise to be exclusive." Ill. Const. art. VII, § 6(i) (emphasis added). Under the Illinois Constitution, in order to preempt a home rule unit's exercise of legislative power, the General Assembly must expressly state that it is doing so in the statute. In contrast, the Illinois Supreme Court had held previously, in *Carlson v. Village of Worth*, 62 Ill.2d 406, 343 N.E.2d 493 (1975),[2] that the State EPA does

---

2. *Carlson* has been superseded by statute, as noted in *American Fly Ash Co. v. County of Tazewell*, 120 Ill.App.3d 57, 75 Ill.Dec. 627, 457 N.E.2d 1069 (1983) and *County of Lake v. Illinois Pollution Control Board*, 120 Ill.App.3d 89, 75 Ill.Dec. 750, 457 N.E.2d 1309 (1983). In Ill.Rev.Stat. ch. 111½, §§ 1039(c), 1039.2 (1982), the Illinois General Assembly restored zoning powers to the unit of local government having jurisdiction over the proposed waste disposal site before a permit may be granted by the Environmental Protection Agency.

*But see County of Kendall v. Avery Gravel Co.*, 101 Ill.2d 428, 79 Ill.Dec. 169, 463 N.E.2d 723 (1984), where the Illinois Supreme Court held that *Carlson* controlled the case at bar, and that the EPA preempted a non-home rule unit's zoning ordinance regulating the crushing of limestone. *Id.* at 172, 463 N.E.2d 726. *Kendall* also reaffirmed the difference, outlined in *Sexton*,

preempt non-home rule units from regulating sanitary landfills.

With regard to a non-home rule unit like the Village of Wauconda, then, legislative intent to preempt may be implied. "[E]xclusivity may be expressed in other ways, notably by enactment of a comprehensive regulatory scheme...." *Hutchcraft*, 104 Ill.App.3d at 823, 60 Ill.Dec. at 536, 433 N.E.2d at 333, *quoting Illinois Liquor Control Commission v. City of Joliet*, 26 Ill.App.3d 27, 32, 324 N.E.2d 453, 456 (1975) (citations omitted). It is well established that "[w]here the General Assembly has established applicable standards governing the regulation of certain areas, municipalities are not generally authorized to enact more restrictive regulations in the absence of specific authority to do so." *Dolson Outdoor Advertising Co. v. City of Macomb*, 46 Ill.App.3d 116, 121, 4 Ill.Dec. 692, 695, 360 N.E.2d 805, 808 (1977), *citing American Smelting & Refining Co. v. County of Knox*, 60 Ill.2d 133, 324 N.E.2d 398 (1974).

In *Dolson*, the court inferred legislative intent to preempt from a comprehensive regulatory scheme. The plaintiff in *Dolson* had obtained a permit to erect off-premise advertising from the Illinois Department of Transportation, pursuant to the Illinois Highway Advertising Control Act, Ill.Rev.Stat. ch. 121, § 514.01 (1975). Defendant, the City of Macomb, a non-home rule municipality, had enacted a zoning ordinance which prohibited billboards in certain areas. *Dolson*, 46 Ill.App.3d at 117, 4 Ill.Dec. at 693, 360 N.E.2d at 806. Thus, although the plaintiff company had obtained a State permit, it was denied the requisite city permit. The court concluded that the municipality's ordinance was void in the face of comprehensive State regulation of highway advertising. *Id.* 46 Ill.

App.3d at 121, 4 Ill.Dec. at 696, 360 N.E.2d at 809.

Similarly, in *Union National Bank and Trust Co. v. Board of Supervisors of Kendall County*, 65 Ill.App.3d 1004, 22 Ill.Dec. 627, 382 N.E.2d 1382 (1978), the court noted that "[w]here the General Assembly provides for 'comprehensive regulation' of an activity, it thereby implies 'that municipalities have no power to regulate this activity.'" *Id.* at 1008, 22 Ill.Dec. at 630, 382 N.E.2d at 1385 (citation omitted). In *Union National*, Kendall County, a non-home rule county, applied its zoning ordinance to deny plaintiffs' right to stripmine limestone on their property pursuant to a permit issued by the State under the Reclamation Act, Ill.Rev.Stat. ch. 96½, § 4501, *et seq.* (1977). The court held that the General Assembly, by enacting a comprehensive regulatory scheme regarding surface mining and reclamation, implied that non-home rule units of local government should have no power to regulate this activity. *Union National*, 65 Ill.App.3d at 1008, 22 Ill.Dec. at 630, 382 N.E.2d at 1385.[3]

Furthermore, courts also look to factors other than the comprehensiveness of a State regulatory scheme to infer State preemption. "Municipalities cannot ... adopt ordinances under a general grant of power which infringe upon the spirit of the State law...." *Village of Mundelein v. Hartnett*, 117 Ill.App.3d 1011, 1015, 73 Ill.Dec. 285, 288, 454 N.E.2d 29, 32 (1983). For example, in *Carlson v. Village of Worth*, 62 Ill.2d at 409, 343 N.E.2d at 495, where the Illinois Supreme Court held that the State EPA preempted a non-home rule unit from regulating sanitary landfills, the court implied legislative intent to preempt from the statement in the Act that "it is necessary to establish a unified state-wide program of environmental protection."

between state preemption of the regulations of home rule versus non-home rule units.

**3.** *See also County of Kendall v. Avery Gravel Co.*, 101 Ill.2d 428, 79 Ill.Dec. 169, 463 N.E.2d 723 (1984), the Illinois Supreme Court's decision on the third lawsuit arising out of the dispute between the Avery Gravel Co. and the County of

Kendall. In *County of Kendall*, the court held that the County's zoning ordinance regulating the crushing, grading, or washing of limestone, an activity apparently not within the Reclamation Act, was preempted by the Illinois Environmental Protection Act. *Id.* at 171–73, 463 N.E.2d 725–27.

In the instant case, the two reasons that Illinois courts have implied legislative intent to preempt—a comprehensive regulatory scheme and a desire to achieve state-wide uniformity—clearly exist. Under the Illinois Pesticide Act of 1979 and the Structural Pest Control Act the labelling, distribution, application, and disposal of pesticides are regulated. The pesticides must be registered and the various categories of pesticide applicators must be licensed or certified. Three different State bodies are involved in pesticide regulation, each administering the statutory provisions within their own area of expertise: the Department of Agriculture oversees agricultural uses, the Department of Public Health supervises pesticide use in buildings, and the Environmental Protection Agency ensures that pesticide use does not contribute to air or water pollution.

The Foundation is an association whose members include commercial law care, arborculture and pest control operators serving customers within the Village of Wauconda limits. Under the Illinois statutory scheme, these commercial applicators must be licensed annually by the State in order to conduct business, and they are subject to State regulation as to which pesticides they may use and the proper methods of application and disposal of these pesticides. As in *Dolson, Union National,* and *Carlson,* the Village of Wauconda's ordinance attempts to impose further restrictions on and require an additional permit for pesticide applicators who already are subject to extensive State regulation and licensure.

Furthermore, the Illinois Pesticide Act of 1979 indicates a legislative desire for uniformity of regulation. Section 820 of the IPA provides:

Cooperation. The Director [of the Department of Agriculture] may cooperate with, receive grants in aid and enter into cooperative agreements or contracts with, any agency of the federal government, of this State, or any other state in order to:

1. Secure uniformity of regulation.

2. Register pesticides under the authority of this Act and FIFRA.

3. Cooperate for the enforcement of any pesticide law and regulation adopted thereunder.

4. Develop and maintain a State Plan for training, certification, licensing and the issuance of permits.

5. Monitor pesticides or regulate certified applicators in order to protect public health and the environment.

Ill.Rev.Stat. ch. 5, § 820 (1983).

As noted above, the Illinois Supreme Court in *Carlson* held that "uniformity" language in the EPA implied a legislative intent to preempt the field of environmental control. Defendants argue that because the EPA language discussed in *Carlson* referred to a "uniform state-wide system of regulation," while the IPA provides for uniformity of regulation *between* states and between this State and the federal government, the rationale of *Carlson* is inapplicable to the instant case. This Court does not find defendants' proffered distinction to be persuasive.

■ Rather, this Court, following the rationale of the New York appellate court in *Ames v. Smoot,* 98 A.D.2d 216, 471 N.Y. S.2d 128 (1983), finds that the kind of "uniformity" language found in the IPA implies a legislative intent to preempt. In *Ames v. Smoot,* the New York Environmental Conservation Law, which extensively regulates pesticides and pesticide users, contained a declaration that "it is desirable that there should be uniformity between the requirements of the several states and the federal government relating to pesticides." *Ames,* 471 N.Y.S.2d at 131. The court found that since enhancement of national uniformity in the regulation of pesticides was one of the purposes of the State statute, "it would be a peculiar interpretation to view the statute as permitting New York's 62 counties, 929 towns, 556 villages and 62 cities ... to adopt their own regulatory schemes concerning the use of pesticides within their geographical limits." *Id.* So too, that the Illinois Pesticide Act of 1979 provides for cooperation between the

various states and between Illinois and the federal government in order to achieve uniformity of regulation implies a legislative intent to preempt the myriad units of local government in Illinois from adding their own conflicting layers of regulation to the existing comprehensive scheme.

■ Although this Court is not bound to follow the law of other states in deciding a question of Illinois substantive law, this Court finds it significant that courts in three states which considered the issue have held that local governmental regulation of pesticide use was preempted by state statute. In *Ames,* the State statute established a system of pesticide regulation which included the designation of restricted use pesticides and a scheme for testing and certifiying pesticide users. Further, the State commissioners of environmental conservation had jurisdiction over all matters involving the distribution, sale, use and transportation of pesticides. The court held that this statute preempted all local pesticide regulation because, as discussed above, it sought national uniformity of regulation, and also because of the complete and detailed nature of the legislative scheme.

The Massachusetts Supreme Court reached a similar conclusion in *Town of Wendell v. Attorney General,* 394 Mass. 518, 476 N.E.2d 585 (1985). *Wendell* involved preemption by the Massachusetts Pesticide Control Act of a pesticide regulation by the Town of Wendell, a home rule unit. The Massachusetts statute establishes a pesticide board and sets forth a comprehensive plan governing the distribution and registration of pesticides and the certification and licensing of pesticide users. 476 N.E.2d at 590. The Town of Wendell passed a regulation which required the Town board of health to hold a public hearing on any proposed pesticide use in the Town. Under the regulation, the board was to determine whether the applicant had complied with all the requirements of the State statute and also that the application of the pesticide was not a danger to the health, environment or safety of the town residents. *Id.* at 588.

Like the pesticide statutes in the instant case, the Massachusetts act contains no language either authorizing or forbidding local regulation of pesticides. *Id.* at 590. Thus, the question before the court was whether the local enactment would clearly frustrate a statutory purpose. *Id.* at 591. The court noted that under the Massachusetts Act, before a pesticide can be registered with the State, a State committee must determine that use of the pesticide will not cause unreasonable adverse effects on the environment. The court also found that the Town of Wendell regulation clearly authorized the Town board of health to impose greater restrictions on the use of pesticides than those imposed in the State statute.

From these findings, the Massachusetts Supreme Court concluded:

The legislature has placed in the subcommittee the responsibility of determining on a statewide basis, pesticide by pesticide, whether its use will cause unreasonable adverse effects to the environment.... An additional layer of regulation at the local level, in effect second-guessing the subcommittee, would prevent the achievement of the identifiable statutory purpose of having a centralized, statewide determination of the reasonableness of the use of a specific pesticide in particular circumstances.

*Id.* at 592. Thus, the court held that the local ordinance frustrated a purpose of the State statute and therefore was preempted by that statute.

Similarly, in *Town of Salisbury v. New England Power Company,* 121 N.H. 983, 437 A.2d 281 (1981), the New Hampshire Supreme Court held that a town ordinance restricting the use of chemical defoliants within the town was preempted by State law and therefore invalid. The court based its holding on the existence of a comprehensive regulatory scheme and the fact that pesticide regulation is an area in which technical expertise is of critical importance. *Id.* 437 A.2d at 282.

■ This Court holds that the Illinois Pesticide Act of 1979 and the Illinois Structural Pest Control Act preempt local regulation of pesticides by non-home rule units, and that therefore Ordinance No. 1984–0–31 is invalid. The two statutes set forth an extensive, detailed and comprehensive regulatory scheme for the use of pesticides within the State of Illinois, which implies a legislative intent to preempt. *See Dolson*, 46 Ill.App.3d at 120, 4 Ill.Dec. at 695, 360 N.E.2d at 808; *Union National*, 65 Ill. App.3d at 1008, 22 Ill.Dec. at 630, 382 N.E.2d at 1385. Further, the IPA indicates a legislative desire for uniformity of pesticide regulation between Illinois and the federal government, which implies that the General Assembly intended that only the State regulate pesticide use within Illinois. *See Carlson*, 62 Ill.2d at 409, 343 N.E.2d at 495.

For these reasons, this Court denies defendants' motion to dismiss Count III of the complaint and grants summary judgment in favor of plaintiff on Count III.

This Court declares that Ordinance No. 1984–0–31 is invalid under Illinois law and therefore was void *ab initio*. This Court further enjoins defendants from enforcing Ordinance 1984–0–31.

### The Request for a Judicial Declaration of Defendants' Liability

In addition to the relief granted thus far, however, plaintiff requests that this Court declare that, under both state and federal law, defendants are liable for the costs and expenses incurred by plaintiff's members in complying with Ordinance No. 1984–0–31. Plaintiff has cited no authority under Illinois law to support its request for damages, and insofar as this Court is aware, none exists. Plaintiff asserts only that defendants are liable for damages under 42 U.S.C. § 1983 ("Section 1983"). Section 1983 provides:

> Every person who, under color of any ... ordinance ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law.... 42 U.S.C. § 1983.

The Supreme Court in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), held that municipalities may be sued under Section 1983 for money damages caused by an unconstitutional ordinance.

■ In *Monell*, the court held that local governing bodies can be sued directly for money damages under Section 1983 when unconstitutional action is implemented through officially adopted policy or decision or through governmental custom. Moreover, in a later case the Supreme Court held that a municipality does not possess the defense of good faith immunity of its officers as an escape from liability under Section 1983. *Owen v. City of Independence, Missouri*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Under the doctrine of good faith immunity, officials are shielded from personal liability so long as their conduct does not violate statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ Finally, the Supreme Court has recently set forth the distinction between personal-capacity and official-capacity suits against state or local officials in *Kentucky v. Graham*, — U.S. —, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) and *Brandon v. Holt*, — U.S. —, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Personal-capacity suits seek to impose liability personally upon a government official for actions taken under color of state law, whereas official-capacity suits against an officer are treated generally as suits against the governmental entity of which the officer is an agent. As the Court held in *Monell, supra,* in an official-capacity suit, the governmental entity's "policy" or "custom" must have been instrumental in the violation of federal law, and in *Monell*'s aftermath, "[t]here is no longer a need to bring official-capacity ac-

tions against local government officials...." *Kentucky v. Graham,* — U.S. at — n. 14, 105 S.Ct. at 3106 n. 14.

In this case, in addition to the Village of Wauconda, the Foundation has sued the president and the trustees of the Village without specifying whether they are sued in their official or personal capacities. To compound the confusion, although neither party raises the issue, the Seventh Circuit has held that absolute immunity from personal liability extends to municipal officials acting in a legislative capacity. *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983). *See also Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1350 (9th Cir. 1982); *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1192–93 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). In *Reed,* the court held that the mayor and trustees of the Village of Shorewood were immune from suit for damages flowing from their legislative action in reducing the number of liquor licenses in the Village. *Id.* at 952.

The Seventh Circuit in *Reed* also held, however, that a municipality may be liable for acts for which the policy-making officials themselves enjoy absolute immunity from personal liability:

> The official acts of municipal policy makers are acts of the municipality for purposes of section 1983 liability. See *Schneider v. City of Atlanta,* 628 F.2d 915, 920 (5th Cir.1980); *Black v. Stephens,* 662 F.2d 181, 191 (3d Cir.1981). And the municipality's liability for such acts extends to acts for which the policy-making officials themselves might enjoy absolute immunity because the acts were legislative or judicial in character. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), so held with regard to the qualified immunity of municipal officers for their executive acts, and we cannot see why there should be a different result here just because these officers' immunity is absolute rather than qualified. The rationale of *Owen,* that holding the municipality liable creates incentives to avoid illegal behavior without at the same time over-deterring individuals by the threat of crushing personal liability, 445 U.S. at 655–57, 100 S.Ct. at 1417–18, applies with as much force to legislative and judicial as to executive officers.

*Reed, supra,* 704 F.2d at 953.

In this case, therefore, although the individual defendants enjoy absolute immunity from a suit for damages caused by the enactment of an allegedly unconstitutional ordinance, the Village itself may be held liable for damages resulting from implementation and enforcement of the invalid ordinance because that ordinance embodies the policy and custom of the Village. Moreover, under *Owens v. City of Independence, supra,* the Village has no absolute immunity defense to liability for damages, although that defense may be available to the Village officials sued in their personal (or individual) capacities.

Thus, to fully resolve the dispute between the parties to the instant action, it is necessary for this Court to examine plaintiff's federal claims to determine whether plaintiff's members may be entitled to damages under Section 1983.

*The Standing Challenge*

As a preliminary matter, the Court must address defendants' motion to dismiss this request for damages. Defendants assert that plaintiff does not have standing to seek money damages on behalf of its members because resolution of the damage claim requires participation of Foundation members in the lawsuit.

■ The first requirement for an association to have standing to sue on behalf of its members is that "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). The Foundation has satisfied this initial requirement by submitting the affidavit of Sherry Roethe, agronomist and manager at Tempo 21, Inc., a

commercial lawn care operator and Foundation member, which attests to the substantial expenses incurred by Tempo and other Foundation members in complying with the Wauconda ordinance. (*See* Mem. in Support of Plaintiff's Motion for Summary Judgment, Appendix 1 and 2 to Exhibit C.)

> Associational standing, however, also depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.

*Common Cause v. Bolger*, 512 F.Supp. 26 (D.D.C.1980), *aff'd without op.*, 461 U.S. 911, 103 S.Ct. 1888, 77 L.Ed.2d 280, *quoting Warth v. Seldin*, 422 U.S. at 515, 95 S.Ct. at 2213.[4]

In *Warth v. Seldin*, the Supreme Court held that an association lacked standing to claim money damages on behalf of its members. The Court noted first that the association alleged no monetary injury to itself nor any assignment of the damages claim of its members. *Id.* at 515, 95 S.Ct. at 2213. The same is true here. Moreover, in *Warth*, as in the instant case, "the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." 422 U.S. at 515–16, 95 S.Ct. at 2214. Subsequent cases have continued to emphasize that where the nature of the claim or the relief sought requires individual participation in the lawsuit by its members, an association does

not have representational standing. *E.g.*, *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784, *reh'g denied*, 448 U.S. 917, 101 S.Ct. 39, 65 L.Ed.2d 1180 (1980); *Simer v. Rios*, 661 F.2d 655 (7th Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982).

In the instant case, as plaintiff points out, the Foundation does not request an award of damages on behalf of its members. Rather, the association seeks only a declaration from this Court that defendants are liable to its members for the costs and expenses of compliance with the Wauconda ordinance. Such a declaration cannot be categorized as prospective relief, because its purpose is to compensate plaintiff's members for the past effects of an invalid ordinance. It would not, however, require the participation of individual members in *this* lawsuit.

■ Plaintiff has not cited, and this Court has not found, a single case where an association has sought this hybrid form of relief. In essence, plaintiff has fashioned its request for relief in a novel manner in order to circumvent the associational standing requirements of *Warth v. Seldin* to assert a claim for damages. If this Court were to issue a declaration of defendants' liability, plaintiff's members would be in a position where they would be entitled to receive damages from defendants upon the production of individualized proof. That the members would be required to go into another court to actually obtain the money judgment is a distinction that violates the spirit of the Supreme Court's holding in *Warth v. Seldin* and its concern that "absent the necessary allegations of demonstrable, particularized injury," *id.* 422 U.S. at 508, 95 S.Ct. at 2210, no

---

**4.** The District of Columbia Circuit in *Common Cause* went so far as to state that the first test for associational standing is that the association must seek prospective relief. *Cf. Peick v. Pension Benefit Guaranty Corp.,* 724 F.2d 1247 (7th Cir.1983), where the Seventh Circuit stated that "[a]ssociational standing is *particularly appropriate* when the association is seeking to represent interests which are central to the purpose of the organization, and where the relief sought

is some form of prospective remedy...." (emphasis added) (citations omitted). *Id.* at 1259. In the instant case, it is uncontested that one of the Foundation's purposes is to initiate lawsuits to prevent unreasonable regulation of pesticide users. (*See* Affidavit of David Dietz, Program Director of the Foundation, Mem. in Support of Plaintiff's Motion for Summary Judgment, Appendix 2 to Exhibit C.)

"case or controversy" exists. This Court therefore holds that the Foundation may not circumvent the standing requirements by seeking a declaration of entitlement to money damages. The Foundation has standing to sue only for prospective relief; it lacks standing to sue for a declaration that its members are entitled to damages.

Because this Court's holding that plaintiff lacks standing to request a declaration of liability for damages appears to be of first impression, this Court will proceed to consider each of plaintiff's alleged Section 1983 claims, in an effort to avoid further litigation on this issue. This Court finds that, even if plaintiff had standing to assert a claim for a declaration of entitlement to damages, damages are not available as a matter of law under any of plaintiff's claims under Section 1983.[5]

*The Federal Preemption and Commerce Clause Claims*

As discussed above, Count I of the complaint alleges that Ordinance No. 1984-0-31 was preempted by FIFRA pursuant to the Supremacy Clause, and that thus the adoption of the ordinance was beyond the scope of defendants' authority in violation of Section 1983.

The Seventh Circuit recently held that an alleged violation of the Supremacy Clause is not cognizable under Section 1983. *Gould, Inc. v. Wisconsin Department of Industry, Labor and Human Relations,* 750 F.2d 608 (7th Cir.1984), *prob. jur. noted,* —— U.S. ——, 105 S.Ct. 2356, 86 L.Ed.2d 257 (1985). The court based its holding on the rationale of *Consolidated Freightways Corporation of Delaware v. Kassel,* 730 F.2d 1139 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984), in which the Eighth Circuit held that an alleged violation of the Commerce Clause is not within the scope of Section 1983.

 Section 1983 was enacted to override discriminatory state laws and provide a remedy where state law was inadequate or unenforced. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The appellate courts reasoned that the function of both the Supremacy Clause and the Commerce Clause relates not to individual rights, but rather to the distribution of power between the state and federal governments. "Both the Supremacy and Commerce Clauses 'limit the power of a state to interfere with areas of national concern.'" *Gould,* 750 F.2d at 616, *quoting Consolidated,* 730 F.2d at 1144. Thus, the Seventh Circuit declined to award attorneys' fees under 42 U.S.C. § 1988 based solely on Gould's success on its federal preemption claims, just as the Eighth Circuit refused to award attorneys' fees based on a Commerce Clause violation.[6]

 Therefore, even if the Foundation succeeded on its federal preemption claim,

---

5. This Court will only examine the substantive issues arising from a particular count of the complaint if that claim could support a judgment for damages under Section 1983.

6. The court in *Gould* noted in a footnote that *Consolidated* relied in part on *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). *Chapman* held that a Supremacy Clause claim brought in district court solely under the federal jurisdictional provisions of 28 U.S.C. § 1343(3) was not cognizable under Section 1983. But *Chapman* rested on the wording and legislative history of Section 1343(3), the statutory provision which gives federal district courts original jurisdiction over all Section 1983 cases. General federal question jurisdiction under 28 U.S.C. § 1331 did not exist because the plaintiff did not meet the previously existing $10,000 jurisdictional amount requirement. Thus, *Chapman* did not address the issue of whether a cause of action for violation of the Supremacy Clause exists under § 1983. The Seventh Circuit noted, however, that the Eighth Circuit's reliance on *Chapman* emphasizes the identity in function between the Supremacy Clause and the Commerce Clause, 750 F.2d at 616 n. 16, and the court squarely held that a Supremacy Clause violation does not state a claim under Section 1983.

*See also Pirolo v. City of Clearwater,* 711 F.2d 1006, 1010 (11th Cir.1983), where the court relied on *Chapman* for the proposition that federal courts do not have jurisdiction to hear Section 1983 claims based on violations of the Supremacy Clause. In *Pirolo,* the court held that although two municipal airport regulation ordinances were preempted by federal law and thus declared invalid, this did not entitle plaintiff to damages under Section 1983.

Count I, that would not entitle it to a declaration that the Village is liable for damages under Section 1983. Likewise, Count V of the complaint, which alleges that the Wauconda ordinance violates the Commerce Clause, does not provide a basis for damages under Section 1983. Accordingly, to the extent that they assert a claim for damages under Section 1983, Counts I and V of the complaint are dismissed for lack of standing and for failure to state a claim upon which the relief requested, damages, may be granted. Because this Court previously has determined that the ordinance at issue is preempted by state law as alleged in Count III, and because federal courts are obligated to avoid constitutional issues that need not be resolved to determine the rights of the parties to the action before them, *County Court v. Allen*, 442 U.S. at 154, 99 S.Ct. at 2223, this Court need not and does not address the remaining substantive issues posed by Counts I and V.

*Equal Protection Claims*

 Count IV alleges that Ordinance No. 1984-0-31 violates the equal protection clauses of both the United States and the Illinois Constitutions, U.S. Const. amend. XIV, § 1; Ill. Const. 1970, art. I, § 2, as well as the Illinois Constitution's prohibition against special legislation, Ill. Const. art. IV, § 13.[7] There is no question that an alleged violation of the fourteenth amendment is cognizable under Section 1983. Accordingly, this Court will analyze Count IV on its merits.[8]

According to plaintiff, Ordinance No. 1984-0-31 deprives its members of equal protection of the laws because it imposes burdensome requirements on certain groups of pesticide users while completely exempting other users. The Wauconda ordinance applies only to "users of pesticides." A "user of pesticides" is defined in § 7-12-1 of the ordinance as "(1) a person who is engaged in the business of applying pesticides for hire, or (2) any person who is the landlord or tenant of a building to which the public is invited...." Under the ordinance, any "user of pesticides" must comply with the permit, application, fee, posting, and warning requirements described above. The Foundation complains that the ordinance imposes no requirements whatsoever on other groups of pesticide users, such as non-commercial applicators, homeowners, landlords and tenants of non-public buildings, owners of golf courses and cemetaries, and farmers.

The classification drawn by the Wauconda ordinance, between "users of pesticides" and those outside the scope of that definition, does not implicate a suspect class or a fundamental right. Therefore, "[t]he requirement imposed by both the Illinois and the Federal Equal Protection clauses is that [the] legislative classification must bear a rational relationship to the purpose of the legislation." *People v. Keeven*, 68 Ill.App.3d 91, 100, 24 Ill.Dec. 663, 669, 385 N.E.2d 804, 810 (1979) (citation omitted). *See also Massachusetts Board of Retire-*

---

7. Count IV of the complaint also alleges that Ordinance No. 1984-0-31 violates the due process clauses of the United States and Illinois constitutions. Nowhere in its briefs does plaintiff provide any support for this claim. Further, the complaint fails to identify any liberty or property interest of which plaintiff's members were deprived. Thus, there is no need for further discussion; defendants' motion to dismiss plaintiff's due process claims is granted and plaintiff's motion for summary judgment on those claims is denied.

8. In *Gould, Inc. v. Wisconsin Department of Industry, Labor and Human Relations*, 750 F.2d 608 (7th Cir.1984), plaintiff raised due process and equal protection claims, which are cogniza-

ble under Section 1983, in addition to its Supremacy Clause claim. The Seventh Circuit noted that such claims might provide a basis for Section 1988 attorneys' fees: if the preemption claim on which Gould prevailed arose out of a common core of facts or was based on legal theories related to its fourteenth amendment claims, then awarding attorneys' fees under Section 1988 would be proper. *Id.* at 616, citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). As in the instant case, however, the alleged reason for federal preemption was completely distinct from plaintiff's fourteenth amendment claim that defendant infringed on its federal rights; thus, the court did not award attorneys' fees.

*ment v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976).

Defendants claim that the Wauconda ordinance's legislative classification is reasonably related to the Village's main purpose in enacting the ordinance: to protect the public health. According to defendants, the ordinance requires the posting of notices that pesticides have just been sprayed or applied in order to warn persons susceptible to adverse reactions to the chemicals of the presence of those pesticides. As defendants explain, persons likely to have an adverse reaction to a pesticide are more likely to come into contact with a pesticide which is applied in a building open to the public than with a pesticide applied in a private area, such as a home or garage. Similarly, a commercial applicator, who sprays and applies pesticides for a living, is likely to apply pesticides within the Village more often than private individuals, so that a pesticide-sensitive person is more likely to come into contact with pesticides applied by a commercial operator.

The Foundation argues that persons who are sensitive to pesticides will have an adverse reaction regardless of who applies the pesticide. Plaintiff submitted an uncontroverted affidavit from Leonard Conley, an agronomist for a commercial lawn care operator, stating that commercial applicators apply the same pesticides that are used by the general public (Mem. in Support of Plaintiff's Motion for Summary Judgment, Exhibit J). The Foundation also contends that it is irrational to exclude from regulation homeowners who have little knowledge of the proper use of pesticides and have not been trained or licensed.

 In order for a legislative enactment to withstand an equal protection challenge, however, it is not necessary that the problem it addresses be eliminated in its entirety. A legislative body's "statutory classifications will be set aside only if no grounds can be conceived to justify them. [citations omitted] With this much discretion, a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the prob-

lem which seems most acute to the legislative mind....'" *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969), *quoting Williamson v. Lee Optical Company of Oklahoma, Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Thus, the Wauconda ordinance does not violate the Equal Protection Clause simply because it does not regulate all persons or entities who might apply pesticides within the Village.

 This Court finds that the classification drawn by the ordinance is reasonably related to the purpose of the ordinance and holds that Ordinance No. 1984-0-31 does not deprive the Foundation's members of equal protection of the laws.

The Foundation also claims that the Wauconda ordinance violates the Illinois Constitution's prohibition against special legislation. "Special legislation confers a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. It arbitrarily, and without a sound, reasonable basis, discriminates *in favor of* a select group...." *Illinois Polygraph Society v. Pellicano,* 83 Ill.2d 130, 137–38, 46 Ill.Dec. 574, 578–79, 414 N.E.2d 458, 462–63 (1980) (emphasis in original; citations omitted).

Plaintiff fails to explain to this Court's satisfaction the manner in which the Wauconda ordinance confers a special benefit on a select group. In addition, Illinois courts have adopted the same "rational basis" test used in equal protection challenges for determining whether legislation violates the prohibition against special legislation. Therefore, because the complaint fails to state a cause of action for violation of the equal protection clauses, it also fails to state a cause of action for violation of the Illinois Constitution's prohibition against special legislation.

Because Count IV is the only one of plaintiff's claims that is cognizable under Section 1983, this Court can not grant plaintiff's request for a declaration of de-

fendants' liability, even if plaintiff did have standing to request such relief.

Accordingly, Count IV of the complaint is dismissed for failure to state a claim upon which relief may be granted, and plaintiff's motion for summary judgment is granted.

### Conclusion

For the reasons stated above, defendants' motion to dismiss Count III is denied and plaintiff's motion for summary judgment on Count III is granted, with the exception of its request for a declaration of defendants' liability for damages. Counts I and V of the complaint are dismissed to the extent that those Counts request a declaration of defendants' liability for damages pursuant to 42 U.S.C. § 1983. Defendants' motion to dismiss Count IV is granted in full. Accordingly, this case is disposed of in full.

This Court declares that Ordinance No. 1984–0–31 is invalid under Illinois law, and therefore was void *ab initio*. This Court further enjoins defendants from enforcing Ordinance No. 1984–0–31. Plaintiff's request that this Court declare that defendants are liable for the costs of compliance with Ordinance No. 1984–0–31 is denied.